2000 OK 18

Lynn SKINNER, Individually, and Lynn Skinner, as Guardian Ad Litem for Kristie Skinner, and as Guardian Ad Litem for Lindsi Skinner, a minor, Appellants/Plaintiffs,

v.

JOHN DEERE INSURANCE COMPANY, Appellee/Defendant.

No. 91,963.

Supreme Court of Oklahoma.

March 14, 2000.

Lloyd Payton, Jeff Payton, Muskogee, Oklahoma, for the appellant.

Mark E. Bialick, David B. Donchin, Oklahoma City, Oklahoma, for the appellee.

1. Debbie Spencer is the wife of Larry Spencer.

2. Okla. Stat. tit. 36, § 3636 (1991), provides:
   A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
   B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the

HODGES, J.

¶ 1 The dispositive issue in this case is whether the trial court erred in its denial of the plaintiff's motion for a new trial after it granted summary judgment for the defendant and denied the plaintiff's motion to supplement his response to the motion for summary judgment. We find that the trial court's denial of the plaintiff's motion for a new trial was proper.

## I. FACTS

¶ 2 In December of 1993, a vehicle driven by Debbie Spencer, owned by Larry Spencer Chevrolet,[1] and insured by the defendant, John Deere Insurance Company (Deere) was involved in an accident. Kristie Skinner, a pregnant passenger in the vehicle, was severely injured. Debbie Spencer and passengers Donna Miller and Maxine Livingston were also injured. The driver and passengers filed underinsured (UM) motorist claims with Deere. The written policy stated that it included $20,000 in UM motorist insurance and $500,000 in liability coverage.

¶ 3 During the early stages of the investigation, Deere discovered that it did not have a written rejection of UM coverage equal to the liability coverage.[2] Because of the lack of

policy of bodily injury liability of the insured. The uninsured motorist coverage shall be upon a form approved by the Insurance Commissioner as otherwise provided in the Insurance Code and may provide that the parties to the contract shall, upon demand of either, submit their differences to arbitration; provided, that if agreement by arbitration is not reached within three (3) months from date of demand, the insured may sue the tort-feasor.
   C. For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.
   . . .
   F. A named insured or applicant shall have the right to reject uninsured motorist coverage in writing, and except that unless a named

the written rejection and the fact that Spencer Chevrolet could not remember being offered the higher limit, Deere determined there was a question whether the UM limits were the stated amount of $20,000 or an imputed amount equal to the liability limits of $500,000.

¶ 4   In its investigation, Deere found that there was no precedential legal authority clearly on the issue of the amount of UM coverage where there was no rejection of an amount equal to the liability coverage. To help resolve the policy limit issue, the defendant sought and received an opinion from attorney David Donchin. The opinion, dated April 14, 1994, stated that Donchin believed that the liability limits would be imputed to the policy if the insured had not been offered and rejected the higher amount. The attorney's opinion was ambiguous as to whether the liability provisions would apply.

¶ 5   Further complicating the issue was the fact that the UM claims exceeded $500,-000 and the parties could not agree on the appropriate method of dividing the funds. In his deposition, the senior claims adjuster stated that even after reading the attorney's opinion, the adjuster believed that Deere was obligated for only $20,000 in UM coverage. The claim logs show that during this time, Deere was actively in the process of determining whether Spencer Chevrolet had rejected the higher limits of UM coverage, the amount of UM coverage for which Deere was legally bound, and Spencer Chevrolet's potential liability exposure for the accident. The facts show that there was an actual dispute of the amount of UM coverage and how the UM funds should be divided among the claimants.

¶ 6   Deere's logs show that on August 9, 1994, the adjuster thought that Deere should get additional information on the medical bills, file an interpleader, and let the court and attorneys determine how the proceeds should be divided. Nonetheless believing it was in the best interest of all involved, Deere apparently decided to offer the $500,000 to the parties to settle. It appears the offer was made some time before November 3, 1994. Deere's logs also indicate that Deere still thought that Spencer Chevrolet might have some liability exposure and that Deere needed to protect its insured, Spencer Chevrolet, from a liability claim. This would explain why Deere requested a general waiver of liability from the claimants. Nonetheless, the claimants could not agree on a division of the proffered amount and the plaintiff, Lynn Skinner,[3] refused to sign a general waiver.

¶ 7   On October 25, 1994, the Court of Civil Appeals filed its decision in *Perkins v. Hartford.*[4] In *Perkins*, the Court of Civil Appeals held that under title 36, section 3636, when an insurer fails to offer UM coverage equal to the liability limits, the liability limits are imputed to the UM coverage. Certiorari was denied on January 18, 1995. *Perkins* was ordered for publication by the Court of Civil Appeals only.[5]

¶ 8   On November 14, 1994, the plaintiff filed the present bad faith action against Deere for unreasonable delay in payment of his UM claim.[6] The following day Deere filed an action in federal court (federal case). Although the petition was titled "Interpleader", it stated that there was a possible dispute concerning the amount of UM coverage. The federal court treated the case as an interpleader and a request for a declaratory judgment to determine the proper amount of UM coverage.

insured or applicant requests such coverage in writing, such coverage need not be provided in or supplemental to any renewal, reinstatement, substitute, amended or replacement policy where a named insured or applicant had rejected the coverage in connection with a policy previously issued to him by the same insurer. . . .

3.   The plaintiff, Lynn Skinner, filed this action individually and as guardian ad litem for Kristie Skinner and Lindsi Skinner.

4.   1994 OK CIV APP 151, 889 P.2d 1262.

5.   Under Okla. Stat. tit. 12, ch. 15, app., rule 1.200 (1991), Court of Civil Appeals' opinions ordered for publication by that court only have only persuasive effect. Only those opinions of the Court of Civil Appeals which are ordered for publication by this Court have precedential value.

6.   In the petition, the plaintiff also sought damages for negligence against Debbie Spencer.

¶ 9 While the federal case was in the district court, all of the claimants except the plaintiff settled for $100,000 total and agreed on the division of the settlement. On November 22, 1995, the federal district court ruled that the UM coverage imputed to the policy was $500,000 because Deere had failed to obtain a rejection of the higher limit. Deere appealed the decision to the federal circuit court. During the pendency of the appeal, the plaintiff settled with Deere for approximately $400,000 ($500,000 minus the $100,000 paid the other claimants) and reserved the bad faith claim.

¶ 10 Shortly after Deere and the plaintiff settled, this Court issued its opinion in *May v. National Union Fire Ins. Co.*[7] In *May*, this Court, expressly overruling *Perkins*, held that an insurer's failure to obtain a written rejection of uninsured motorist coverage equal to the amount of liability coverage resulted in an imputed uninsured motorist policy at the statutory minimum.

¶ 11 Thereafter on August 5, 1996, Deere filed a motion for summary judgment and brief in support thereof in the present case. A dispute arose concerning whether Deere's files generated after November 14, 1994, the date the petition was filed in this case, were discoverable. The trial judge ruled that Deere's files generated and assembled after the petition was filed were not relevant and, thus, not discoverable. In the same order, the trial court ordered the plaintiff to file a response to the motion for summary judgment within thirty days after the last deposition of the Deere claims personnel was taken.[8] On October 23, 1996, Skinner filed a motion for sanctions for his perceived failure of Deere to comply with a discovery order. Deere responded that it had complied with the discovery order.

¶ 12 The plaintiff sought relief from the trial court's denial of its discovery request by filing an application for a writ of mandamus in this Court. On March 10, 1997, this Court issued an order assuming original jurisdiction and ordering the trial judge to conduct an in camera inspection of the documents generated by Deere after the petition was filed and determine if they were subject to an attorney-client or work-product privilege. This Court did not rule on whether the documents could be discovered. Specifically, this Court stated: "This writ is not to be treated as this Court's determination when the good-faith covenant of an insurance contact comes to an end or if the matters that will be discovered are admissible in evidence." Thereafter, the trial court conducted an in camera review of Deere's file and found that the documents requested by Skinner were privileged and that Deere did not have to produce them.

¶ 13 On March 5, while the plaintiff's petition for a writ of mandamus was pending before this Court, the plaintiff filed his response to Deere's motion for summary judgment. Then on March 20, 1997, the plaintiff filed an application to supplement his response to the motion for summary judgment. Even though this Court had refused to rule on the issue of when the good-faith covenant of an insurance contact comes to an end, the plaintiff argued before the trial court that this Court's order altered his position to include a claim for action occurring after the petition was filed. The trial court refused to allow the plaintiff to supplement his response. The trial court granted Deere's motion for summary judgment.

¶ 14 The plaintiff filled a motion for a new trial raising a number of errors. The trial court denied plaintiff's motion, and the plaintiff appealed. On appeal, the plaintiff argued that the trial court erred in overruling the motion for a new trial, granting the motion for summary judgment, overruling the motion for sanctions, refusing to obey this Court's order on the application for a writ of mandamus, and ruling that certain of Deere's documents were privileged. The Court of Civil Appeals held that there were factual questions regarding whether Deere acted reasonably and, thus, summary judgment for Deere was improper. This Court granted Deere's petition for certiorari.

---

7. 1996 OK 52, 918 P.2d 43. The opinion issued on April 9, 1996, and rehearing was denied on June 19, 1996.

8. The record does not reflect the date on which the last deposition of the Deere claims personnel was taken.

## II. SUMMARY JUDGMENT

¶ 15 Plaintiff's primary claim of error is that the trial court erred in granting Deere's motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact.[9] On appeal, the parties may not rely on any fact or material referred to or included in the documents not submitted to the trial court.[10] This Court's review of a judgment based on a motion for summary judgment is de novo.[11] The court must determine as a matter of law if the evidentiary material in the record, viewed most favorable to the non-moving party, supports the judgment.[12]

## III. TORT OF BAD FAITH

¶ 16 This Court first recognized the tort of bad faith for the failure to settle an insurance claim in *Christian v. American Home Assurance Company*.[13] In *Christian*, this Court adopted the general rule: "[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort...."[14] Tort liability arises only "where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured."[15] Because withholding payment is a necessary element of a claim for bad faith in refusing to pay a legitimate claim, the actions of an insurer after payment is made cannot be the basis of the bad faith claim. Because disagreements can arise concerning the amount of coverage, cause of loss, and breach of policy conditions, the tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute.

¶ 17 The record shows that Deere acted reasonably as a matter of law and, thus, summary judgment was proper. There was a legitimate dispute concerning the amount of UM coverage imputed to the policy and the amount to which each claimant was entitled. The record shows that during the relevant time period, Deere was actively attempting to resolve the question of its exposure for UM coverage. There was no conclusive precedential legal authority on the issue of the amount of UM coverage imputed to the policy under these factual circumstances. Deere negotiated with the claimants and investigated on its own to determine its actual UM exposure. It sought an attorney's opinion, with which Deere disagreed. Deere's position that it was responsible for only $20,000 was justified by this Court's decision in *May*.[16]

¶ 18 After Deere filed the interpleader, it settled with the other claimants for $100,000 and a received a release for further claims from them. The plaintiff would not agree to the terms of a general release and refused to settle the claim. It was Deere's belief that if Debbie Spencer was even one percent liable for the accident, Deere as insurer of Spencer Chevrolet would be responsible for up to $500,000 for the liability claim as well as for the UM claim. Because there was a question concerning the liability exposure of Spencer Chevrolet and the implications on the amount of UM coverage, we do not agree with the plaintiff that Deere's actions in seeking a general release were unreasonable. The evidentiary material submitted by the parties to the trial court does not show a material dispute concerning the facts. Because it is not bad faith to investigate or litigate a disputed claim, the trial court was correct in granting summary judgment for Deere.

¶ 19 The plaintiff argues that Deere was obligated to adhere to the Court of Civil Appeals' opinion in *Perkins*. The decision in *Perkins* was not ordered for publication by this Court. Thus, it was persuasive only and

9. Okla. Stat. tit. 12, ch. 2, app. 1, rule 13 (1991).

10. *Id.* at rule 13(b).

11. *Vance v. Federal National Mortgage Assoc.*, 988 P.2d 1275, 1278, 1999 OK 73, ¶ 6.

12. *Id.*

13. 1977 OK 141, ¶ 25, 577 P.2d 899, 904.

14. *Id.*

15. *Id.* at 1977 OK 141, ¶ 26, 577 P.2d at 905.

16. 1996 OK 52, 918 P.2d 43.

had no precedential effect.[17] The plaintiff incorrectly asserts that the law at the time of Deere's alleged bad faith failure to pay a claim was settled and, at the time, the liability limits would be imputed to the policy.

## IV. TRIAL COURT'S FAILURE TO FOLLOW THIS COURT'S MARCH 10, 1997 ORDER

¶ 20 The plaintiff also alleges that the trial court did not follow this Court's order on writ of mandamus. This Court's order of March 10, 1997, directed the trial court to conduct a hearing to determine if documents generated by Deere after the petition was filed were privileged and to allow discovery of documents which were not privileged. The trial court acted in the manner that this Court had directed and made a determination that all documents presented at the in camera hearing were privileged. The trial court followed this Court's order.

## V. DENIAL OF MOTION TO AMEND AND SUPPLEMENT RESPONSE TO SUMMARY JUDGMENT

■ ¶ 21 The plaintiff asserts that the trial court erred in denying his motion to amend and supplement his response to the motion for summary judgment. He argues that this Court's order of March 10, 1997, caused a change in his position to include post-petition[18] issues, and the denial violated his right to due process.

¶ 22 The trial court allowed the plaintiff seven months in which to file his response to Deere's motion for summary judgment. The proposed amended response was substantially the same as the initial response. Although the plaintiff had sought additional discovery, the trial court determined the documents sought by the plaintiff were privileged. Thus, the plaintiff had no new evidence to submit with the amended response. The trial court did not rule on the plaintiff's

motion to amend until after it conducted the in camera review of the documents and found that they were privileged.

¶ 23 The plaintiff admits that bad faith ends on actual payment of the obligation.[19] Thus, the plaintiff's bad faith claim could not have been based on Deere's action after it filed the federal case and interpleaded the $500,000 with the court. Even though the plaintiff may not have received the payment immediately, once Deere placed the money with the court, it met its obligation to pay the claim. Although Deere correctly believed that it was obligated in the amount of $20,000 in UM coverage, it submitted $500,000 to the federal court. Deere had a legitimate reason for filing the federal action—the claimants' inability to agree on the division of the proceeds and the unclear state of the law regarding the amount of UM coverage imputed to the policy under these facts. Therefore, as a matter of law, Deere did not act in bad faith after the federal action was filed.

## VI. OTHER ALLEGED ERRORS

■ ¶ 24 The plaintiff asserts that the trial court erred in denying his motions for sanctions based on discovery disputes and ruling that the documents produced for the in camera review were privileged. Section 3237 of title 12 of the Oklahoma Statutes vests the trial court with discretion to impose sanctions for failure to comply with discovery orders. The party objecting to the trial court's decision regarding the imposition of sanctions has the burden of showing that the trial court abused its discretion.[20] The plaintiff has failed to show that the trial court abused its discretion in refusing to sanction Deere for failing to produce documents sought to be discovered. Thus, we cannot say that the trial court erred in refusing to impose sanctions on Deere.

■ ¶ 25 The plaintiff also argues that Deere's files generated post-petition were

---

**17.** Okla. Stat. tit. 12, ch. 15, app., rule 1.200 (1991).

**18.** The plaintiff uses the term "post-petition" to refer to the time period after the petition was filed in this case, not the time period after the federal case was filed.

**19.** *Christian*, 1977 OK 141 at ¶ 26, 577 P.2d at 905.

**20.** Okla. Stat. tit. 12, § 3237(B) (1991).

not privileged. The appellant has the "duty to incorporate into the record all materials necessary to secure corrective relief."[21] The record is void of evidence that the plaintiff attempted to incorporate into the record Deere's files generated post-petition or a summary thereof. This Court will uphold the decision of the trial court absent support in the record.[22]

## VII. CONCLUSION

¶ 26 In conclusion, the trial court properly granted summary judgment to the defendant, John Deere Insurance Company, as there was no genuine dispute of material fact. The trial court did not abuse its discretion in denying the plaintiff's motion for sanctions. The trial court did not err in refusing to allow the plaintiff to file an amended response to Deere's motion for summary judgment. The judgment of the trial court is affirmed. The Court of Civil Appeals' opinion is vacated.

¶ 27 The plaintiff has filed a motion for appeal-related costs based on section 978 of title 12 of the Oklahoma Statutes. Section 978 allows recovery of appeal-related costs when a judgment is reversed on appeal. Because we affirm the judgment of the trial court, the plaintiff's motion for appeal-related costs is denied.

COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT AFFIRMED.

¶ 28 SUMMERS, C.J., HARGRAVE, V.C.J., OPALA, WATT, BOUDREAU, and WINCHESTER, JJ., concur.

¶ 29 KAUGER, J., concurs in result.

¶ 30 LAVENDER, J., dissents.

---

21. *Halliburton Oil Producing Co. v. Grothaus,* 1998 OK 110, ¶ 11, 981 P.2d 1244. 1249; *see Norman Plumbing Supply Co. of Oklahoma City v. Gilles,* 1973 OK 89, ¶ 13, 512 P.2d 1177, 1178.

22. *See Halliburton Oil,* 1998 OK 110, 981 P.2d 1244.