2000 OK CIV APP 145

Frank SIMS and Mary Sims, Plaintiffs/Appellants,

v.

The TRAVELERS INSURANCE COMPANY, a foreign corporation, Defendant/Appellee.

No. 93,603.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 1, 2000.

Certiorari Denied Dec. 12, 2000.

Glen Mullins, Oklahoma City, Oklahoma, for Appellant.

Mark E. Bialick, Katherine T. Loy, Oklahoma City, Oklahoma, for Appellee.

## OPINION

CARL B. JONES, Presiding Judge:

¶ 1 Appellants, Frank Sims and Mary Sims (Sims), filed this lawsuit against Appellee, Travelers Insurance Company (Travelers), after Mr. Sims was involved in an automobile accident in January of 1994. The Sims had a business automobile policy with Travelers which included medical payments and under-insured motorist insurance (UIM) benefits.

¶ 2 Traveler's first notice of this claim occurred when Travelers was served with a summons for this lawsuit in February of 1995. The Sims amended their petition to include a claim for bad faith regarding their medical payments coverage in July of 1996. On March 30, 1998, the Sims amended their petition for the second time asserting bad faith handling of their UIM lawsuit. After

this amendment, the Sims requested production of Travelers' entire claim file. Travelers' objected. The trial court reviewed the file in camera and determined that the documents were protected by the attorney-client privilege. The Sims appeal from this order.

¶ 3 Travelers' filed a Motion for Partial Summary Judgment on the bad faith claims. Travelers' claimed that no bad faith had occurred regarding the handling of the medical payments claim because the Sims had never made a medical payments claim. On the claim of bad faith handling of the UIM claim, Travelers claimed there was a legitimate dispute on the value of the UIM claim and that the conduct of the attorneys in defending the lawsuit did not form a basis for a bad faith action. The trial court granted Travelers' motion for partial summary judgment. The Sims appeal this order.

¶ 4 The UIM contract claim proceeded to a jury trial. A special interrogatory was presented to the jury on Travelers' affirmative defense of misrepresentation on the claim filed with Travelers. The jury found in favor of the Sims and proceeded to determine damages. The jury awarded Mr. Sims $125,000.00 in damages and awarded Mrs. Sims $25,000.00 in damages. The Sims appeal this verdict. In addition, the trial court determined that prejudgment interest would only be calculated on the amount owing after Travelers received credit for $100,000.00 that Travelers paid to the Sims in 1998 pursuant to an indemnification agreement. The Sims appeal this ruling.

¶ 5 The Sims urge five issues on appeal: 1) whether the trial court abused its discretion in refusing to require Travelers to produce its claim file; 2) whether the trial court erred in granting Travelers' partial summary judgment on the bad faith claims; 3) whether the trial court abused its discretion when it refused to allow into evidence medical records, bills and expert witnesses' reports; 4) whether the trial court erred in submitted Travelers' misrepresentation defense to the jury; and, 5) whether the trial court erred in allowing a credit for the $100,000.00 paid by Travelers to the Sims in calculating the prejudgment interest to be awarded.

¶ 6 On appeal, the Sims argue that the trial court's refusal to allow them to discover Travelers' claim file was contrary to the previous rulings of *Floyd v. Ricks*, 1998 OK 9, 954 P.2d 131, and *Darzenkiewicz v. Jackson*, 1994 OK 151, 904 P.2d 66. The Oklahoma Supreme Court ordered a claim file discoverable in *Floyd* because the only objection by the insurer was that the lawsuit was frivolous. There was no mention of an attorney-client privilege or attorney work product objection. In *Darzenkiewicz*, no facts are stated by the Oklahoma Supreme Court. It is simply an order directing discovery of an insurer's claim file. Here, Travelers has objected to its claim file being discoverable on the basis that the documents were all generated pursuant to the filed litigation, as that was Travelers' first notice of the claim, and, as such, are undiscoverable because the documents are attorney work product and/or attorney-client privilege.

¶ 7 In *Skinner v. John Deere Ins. Co.*, 2000 OK 18, 998 P.2d 1219, the Oklahoma Supreme Court, pursuant to a writ of mandamus, ordered the trial court to conduct an in camera inspection of the documents generated by the insurer after the petition was filed and determine if they were subject to an attorney-client or work-product privilege. In the case at bar, the trial court conducted an in camera inspection and ruled the documents were subject to an attorney-client privilege. The trial court sealed the claim file and the Sims designated the sealed claim file on appeal.

¶ 8 We begin with the basic premise that the attorney-client privilege is designed to shield the client's confidential disclosures and the attorney's advice. In order to establish the privilege, it must be shown that the status occupied by the parties was that of attorney and client and that their communications were of a confidential nature. Whether a communication is privileged from disclosure is for the trial court to decide in light of a preliminary inquiry into the existence and validity of the privilege. The trial court's ruling is conclusive in the absence of an abuse of discretion. *Chandler v. Denton*, 1987 OK 38, 741 P.2d 855, 865. We have reviewed the sealed documents and

they appear to be documents relating to communications between the insurer and its attorneys concerning the lawsuit and generated after litigation was filed. We find that the trial court did not abuse its discretion in finding these documents were subject to an attorney-client privilege.

¶ 9 The Sims contend the trial court erred in granting the partial summary judgment motion because there was conflicting evidence regarding whether Travelers properly investigated and evaluated the Sims' medical pay and UIM claims. Travelers' motion for partial summary judgment provided excerpts from the deposition of Mr. Sims in which he outlined the specific acts of bad faith which were litigation conduct of the attorneys representing Travelers. Additionally, Travelers produced evidence that the parties had a legitimate dispute regarding the value of the Sims' claims.

¶ 10 The Oklahoma Supreme Court has not addressed the general question of whether an insurer's litigation conduct may be considered as evidence of bad faith. However, the Tenth Circuit Court of Appeals in *Timberlake Construction Co. v. U.S. Fidelity and Guaranty Co.,* 71 F.3d 335, 340–41 (10th Cir.1995), did address this issue. The Tenth Circuit reviewed Oklahoma's case law discussing bad faith claims and considered public policy concerns in making its determination that litigation conduct should rarely, if ever, be allowed to serve as proof of bad faith. The Court relied upon *Christian v. American Home Assur. Co.,* 1977 OK 141, 577 P.2d 899, and its progeny which required that a claim for bad faith be assessed from the standpoint of all facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.,* 1992 OK 43, 841 P.2d 568, 572. The Tenth Circuit reasoned that an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage because once litigation has commenced, the actions taken in its defense are not probative of whether the insurer's denial of the claim was in bad faith.

¶ 11 Respecting the public policy concerns, the Tenth Circuit found that allowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims resulting in a chilling effect on insurers, which could unfairly penalize them by inhibiting their lawyers from zealously and effectively representing their clients within the bounds permitted by law. The Tenth Circuit noted that the Rules of Civil Procedure provide adequate means for redress of improper litigation conduct such as motions to strike, compel discovery, protective orders or sanctions. The Sims' complaints were that the lawyers for Travelers had treated the Sims as adversaries; filed motions to dismiss; objected to discovery; did not take depositions at the times the Sims offered to produce witnesses for deposition; misdocketed meetings; and, rejected the Sims' request for mediation. It should be noted the Sims are the parties who cast this situation in an adversarial setting as the Sims never filed a claim for UIM or medical payments; instead, they chose to file a lawsuit. Further, the Sims' attorney from the beginning advised Travelers' that all discovery would be conducted in a formal setting rather than the Sims providing the information voluntarily. Following the rationale of *Timberlake, supra,* we find the litigation conduct alleged here cannot be the basis for a bad faith action.

¶ 12 The second prong of Travelers' motion for partial summary judgment was a legitimate dispute regarding the value of the Sims' claims. Travelers' contended, and produced evidence, that Mr. Sims had preexisting back problems, a dispute among the medical professionals regarding whether the accident was the cause of Mr. Sims' erectile dysfunction, and a dispute regarding the lost income claim, as Mr. Sims' documentation showed a decrease in his income from his business, but an increase in his wife's income from the business although she testified in her deposition that she never worked at one of the stores and had done some very limited seasonal work at the other store. We note that both parties submitted evidence of their respective valuation of the claims in their evidence to support their briefs on this sub-

ject. It is undisputed that the Sims originally offered to settle their claim for $700,000.00 while Travelers' offer was $100,000.00. The lowest amount the Sims considered for settlement was $300,000.00 while Travelers never wavered from their $100,000.00 offer. The jury awarded the Sims $150,000.00. Further, the Sims did not produce any evidence suggesting that Travelers did not have a defense to the Sims' claims. In fact, the evidence submitted by the Sims proved that there was a legitimate dispute regarding the value of the Sims' claims. A bad faith action will not lie where there is a legitimate dispute. *Manis v. Hartford Insurance Co.*, 1984 OK 25, 681 P.2d 760, 762. The trial court properly granted Travelers' motion for partial summary judgment on the bad faith claims.

¶ 13 The next assertion of error is the trial court improperly excluded the introduction of reports made by Travelers' experts. The Sims argue they should have been allowed to introduce three reports written by Travelers' experts into evidence. However, the only mention of these reports in the record are in the pre-trial order and Travelers' Motion in Limine. The transcript of the trial submitted on appeal begins in the middle of the trial court's ruling on Travelers' motion in limine, and apparently the trial court ruled on the exclusion of these reports prior to the hearing being transcribed. Without a record of the trial court's ruling on this issue, this Court cannot determine whether any error occurred and error will not be presumed. *Chamberlin v. Chamberlin*, 1986 OK 30, 720 P.2d 721. The party seeking relief from the appellate court bears the burden of obtaining a record sufficient to support the corrective relief sought. *Depuy v. Hoeme*, 1989 OK 42, 775 P.2d 1339, 1343.

¶ 14 The Sims contend the trial court erred in excluding medical bills and medical records from presentation to the jury. Travelers contended the Sims failed to specifically list those documents on the pre-trial order and failed to exchange the same with Travelers five days before trial as ordered by the trial court. The Sims admitted they had failed to comply with the pre-trial requirements set forth by the trial court.

The Sims argued that because medical authorizations had been furnished to Travelers, it was aware of these documents and would not be prejudiced. However, Mr. Sims' treatment spanned a period of five years. Travelers argued that pursuant to the pre-trial order each party was required to specifically list and exchange the exhibits each would be utilizing during trial, and each party would be bound by their specification of listed documents. The trial court excluded the evidence because the Sims failed to list the documents on the pre-trial order. A trial court has the power to enforce its own pre-trial order which is designed to prevent surprise evidence. The trial court's ruling will only be reversed if an abuse of discretion is found. *Middlebrook v. Imler, Tenny & Kugler M.D.s*, 1985 OK 66, 713 P.2d 572, 582. We find no abuse of the trial court's discretionary power.

¶ 15 The Sims maintain that the trial court improperly instructed on the issue of misrepresentation and as a result the Sims were prejudiced. When reviewing jury instructions, we consider whether the probability arose that the jurors were misled and reached a different conclusion due to an error in the instruction given. *Cimarron Feeders v. Tri–County Electric Co-op., Inc.*, 1991 OK 104, 818 P.2d 901, 902, the trial court gave the jury a special interrogatory which provided that the Sims' insurance policy provided that their coverage would be voided if the insured intentionally concealed or misrepresented a material fact concerning a claim under the coverage. Travelers had submitted documents into evidence which inferred that the Sims may have misrepresented their income loss claim as discussed above. The Sims argue that the policy provision did not pertain to the UIM rider. We do not need to determine whether the policy provision pertained to the UIM rider because the jury answered the special interrogatory in favor of the Sims. We cannot find, under the facts of this case, that the Sims were prejudiced or that the jury was misled by this special interrogatory.

¶ 16 The final proposition of error is whether the trial court erred in granting a

credit to Travelers on the prejudgment interest because Travelers had paid $100,000.00 on behalf of the Sims pursuant to an indemnification agreement executed April 14, 1998. In *Landrum v. National Union Ins. Co.,* 1996 OK 18, 912 P.2d 324, 329, the Oklahoma Supreme Court found that the purpose of 12 O.S.1991 § 727 was to require a negligent party to pay the plaintiff interest for the plaintiff's loss of use of money to which he was entitled. The Court ruled that money paid to the plaintiff, or on the plaintiff's behalf prior to litigation would not be subject to prejudgment interest because the plaintiff had access to the money and it was the defendant who was deprived of the use of that money during litigation. The Sims contend they did not have full use of the $100,000.00 prior to judgment. However, the record reveals Travelers tendered the check in the amount of $100,000.00 to the Sims' attorney and a portion of the money was utilized to pay attorney fees and a debt prior to trial. Pursuant to *Landrum, supra,* we find the trial court properly determined that the previously paid $100,000.00 would not be subject to prejudgment interest. Accordingly, the trial court's orders and the jury verdict are affirmed.

¶ 17 AFFIRMED.

¶ 18 GARRETT, J., and BUETTNER, J., concur.