2014 OK 50

**Justin and Brandy PORTER, individually and on behalf of all others similarly situated, Plaintiffs/Appellants,**

v.

**OKLAHOMA FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant/Appellee.**

No. 111,218.

Supreme Court of Oklahoma.

June 17, 2014.

¶ 2 We find that the district court erred in dismissing the petition in its entirety when the allegations taken as true stated a claim for breach of contract. We previously granted certiorari.

## I. FACTS AND PROCEEDINGS

¶ 3 The following facts are undisputed. On November 14, 2009, sewage entered into and damaged the home of Justin and Brandy Porter (Plaintiffs). At the time, Plaintiffs' home was insured by Oklahoma Farm Bureau Mutual Insurance Company (Defendant) under a "Homeowners Special Coverage Policy" (the policy). Plaintiffs initiated a claim with Defendant for their loss, which Defendant denied in a letter dated November 18, 2009 (the denial letter).

¶ 4 On February 12, 2010, Plaintiffs filed a petition in the district court for breach of contract and breach of the duty of good faith and fair dealing. Plaintiffs argued that the district court should follow *Andres v. Oklahoma Farm Bureau Mutual Insurance Co.*, 2009 OK CIV APP 97, 227 P.3d 1102, *cert. denied*, (Nov. 23, 2009) to find that the policy was ambiguous because it contained conflicting provisions on loss caused by water damage [1] and that the doctrine of reasonable expectations required the ambiguity to be construed in favor of coverage. Plaintiffs also argued that Defendant committed bad faith when Defendant wrote a policy that both includes and excludes a named peril and then denied Plaintiffs coverage under the policy.

¶ 5 Plaintiffs amended their petition to bring classwide claims on behalf of others similarly situated. Plaintiffs amended their petition a second time to allege "breach of the implied covenant of good faith and fair dealing and/or fraud," individually and classwide. Plaintiffs' motion for leave to file a second amended petition did not address an individual or class-action fraud claim.[2]

Donald E. Smolen II and Laura M. Lauth, Smolen, Smolen & Roytman, PLLC, Tulsa, Oklahoma, for Plaintiffs/Appellants.

Tim D. Cain and Stephen M. Coates, Wilson, Cain & Acquaviva, Tulsa, Oklahoma, for Defendant/Appellee.

TAYLOR, J.

¶ 1 The issue before this Court is whether the district court erred in granting Defendant's motion to dismiss. The resolution of this issue turns on two questions that Plaintiffs preserved in their petition for certiorari. The first question is whether Plaintiffs' homeowners insurance policy is ambiguous when the policy covers loss to personal property "caused by ... accidental discharge or overflow of water from within a plumbing ... system" (the accidental-discharge-coverage provision) and excludes coverage for loss to real and personal property "resulting directly or indirectly from ... water which backs up through sewers or drains" (the sewer-or-drain-backup exclusion). If the policy is ambiguous, the second question is whether the doctrine of reasonable expectations requires the ambiguity to be construed in favor of coverage.

1. The parties do not dispute whether the term "water" in the policy includes raw sewage or waste water.

2. Plaintiffs had neither leave of court nor Defendant's written consent to amend their petition to include allegations of fraud. *See* 12 O.S.2011, § 2015(A). Additionally, Plaintiffs failed to state with particularity the circumstances constituting fraud when the only support Plaintiffs offer for their fraud claim is that at the time Defendant

¶ 6 Defendant filed a motion to dismiss the class-action claims and the fraud claim for failure to state a claim upon which relief can be granted. Defendant subsequently stated that the motion to dismiss "does not address any other claims" and that "a dispositive motion challenging the merits of Plaintiffs' individual breach of contract and bad faith claims [would] likely be filed in the future." The district court, however, dismissed all claims.[3] The district court found that (1) there was no dispute of material fact, (2) the only potential ambiguity involved coverage for loss to personal property, (3) Plaintiffs failed to allege any claim with respect to personal property when all their claims regarded damage to their home, and (4) the policy was unambiguous as to coverage for loss to real property and clearly excluded coverage for loss to Plaintiffs' real property.

¶ 7 The district court erred in finding that the material facts were not in dispute. The parties disputed the source of Plaintiffs' loss. Plaintiffs' second amended petition alleged that their "home was damaged by sewage and waste water which overflowed from their plumbing lines."[4] Defendant's motion to dismiss a portion of the claims stated that the cause of damage was "a backup of sewage into Plaintiffs' dwelling." The denial letter contended that the cause of the loss was a severed sewer line located off Plaintiffs' premises.[5]

¶ 8 Plaintiffs appealed. The Court of Civil Appeals (the COCA) treated the dismissal as a summary judgment and affirmed the district court. The COCA found that (1) there was no dispute of material fact, (2) there was no ambiguity in the policy as to coverage for loss to real and personal property, (3) the record included allegations of loss to personal property, and (4) the policy unambiguously and expressly excluded coverage for the type of loss that occurred to Plaintiffs' real and personal property. This Court previously granted the writ of certiorari.

## II. STANDARD OF REVIEW

¶ 9 This Court reviews a trial court's judgment dismissing a petition *de novo*. *Wilson v. State ex rel. State Election Bd.*, 2012 OK 2, ¶ 4, 270 P.3d 155, 157. "When evaluating a motion to dismiss, the court examines only the controlling law, not the facts. Thus, the court must take as true all of the challenged pleading's allegations together with all reasonable inferences that can be drawn from them. Motions to dismiss are generally disfavored...." *Id.* "A motion to dismiss for failure to state a claim upon which relief may be granted will not be sustained unless it should appear without doubt that the plaintiff can prove no set of facts in support of the claim for relief." *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶ 7, 176 P.3d 1204, 1208–09. We review the motion to dismiss under this standard.

## III. THE RELEVANT POLICY PROVISIONS

¶ 10 Plaintiffs allege that the sewer-or-drain-backup exclusion conflicts with the ac-

---

sold the policy to Plaintiffs, Defendant knew or should have known that the policy contained contradictory provisions. *See* 12 O.S.2011, § 2009(B). Thus, the district court correctly dismissed the fraud claim.

**3.** We find that the district court erred in dismissing all claims in the petition when the allegations taken as true stated a claim for breach of contract. *See* 12 O.S.2011, § 2012(B)(6).

**4.** The district court found that Plaintiffs had made a claim for loss to real property only, while the Court of Civil Appeals found that Plaintiffs had made a claim for loss to real and personal property. Plaintiffs first alleged personal-property loss in a brief submitted after the second amended petition was filed. Plaintiffs again alleged personal-property loss in their response to the motion to dismiss, citing their second amended petition. However, the second amended petition alleged only that Plaintiffs' "home" was

damaged. We agree with the district court that Plaintiffs failed to state a claim for loss to their personal property. Plaintiffs had neither leave of court nor Defendant's written consent to amend their petition to include allegations of personal property loss. *See id.* § 2015(A).

**5.** The denial letter stated, in pertinent part: "Oklahoma Natural Gas had cut the sewer line to [Plaintiffs'] home about three weeks ago. This caused sewage to back up into [Plaintiffs'] home several times. ONG has since repaired the line and there have been no further instances of sewage backup since." The denial letter quoted the sewer-or-drain-backup exclusion and another exclusion to real property coverage not at issue here. The denial letter stated: "Because of these exclusions, [Defendant] will be unable to assist [Plaintiffs] with this loss."

cidental-discharge-coverage provision, creating an ambiguity that must be resolved in favor of coverage under the doctrine of reasonable expectations. The relevant provisions of Plaintiffs' policy are provided below.

**Perils We Insure Against**

*We cover direct loss to property covered under Dwelling—Coverage A, Other Structures—Coverage B except for losses excluded in this Section.*

*We cover direct loss to property insured under Personal Property—Coverage C caused by:*

. . . .

14. *Accidental Discharge or Overflow of Water or Steam from within a plumbing,* heating, air conditioning or automatic fire protection sprinkler system or domestic appliance.

. . . .

This peril does not apply to loss:

. . . .

e. on the residence premises caused by accidental discharge or overflow which *occurs off the residential premises.*

. . . .

**Exclusions—Losses We Do Not Cover**

Under Dwelling—Coverage A, Other Structures—Coverage B, and Personal Property—Coverage C, we do not cover loss resulting directly or indirectly from:

. . . .

3. water damage meaning:

. . . .

b. *water which backs up through sewers or drains* . . . .

(Emphasis added.)

¶ 11 Plaintiffs urge this Court to interpret this policy language similar to *Andres v. Oklahoma Farm Bureau Mutual Insurance Co.,* 2009 OK CIV APP 97, 227 P.3d 1102, *cert. denied,* (Nov. 23, 2009). *Andres* involved the same insurance company, the same exclusionary clause, a similar accidental-discharge-coverage provision, and a claim for similar loss. The *Andres* court agreed that a sewer line is part of the plumbing system of a house, *id.* ¶ 11, 227 P.3d at 1106, and found that a reasonable person in the insured's position would believe that the accidental-discharge-coverage provision covered raw sewage damage. *Id.* ¶ 14, 227 P.3d at 1106. The *Andres* court determined that the exclusion of raw sewage damage conflicted with the accidental-discharge-coverage provision and created an ambiguity. *Id.* ¶ 14, 227 P.3d at 1106. The *Andres* court concluded that the policy covered the overflow of raw sewage and that the plaintiffs were entitled to summary judgment as a matter of law. *Id.*

## IV. BREACH OF CONTRACT

¶ 12 Oklahoma law involving the interpretation of insurance contracts is well settled. "Parties are at liberty to contract for insurance to cover such risks as they see fit and they are bound by terms of the contract," and "courts are not at liberty to rewrite the terms of an insurance contract." *Cranfill v. Aetna Life Ins. Co.,* 2002 OK 26, ¶ 5, 49 P.3d 703, 707. "In Oklahoma, the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties." *In re Kaufman,* 2001 OK 88, ¶ 13, 37 P.3d 845, 853. When policy provisions are clear, consistent, and unambiguous, we look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent. *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, ¶ 12, 812 P.2d 372, 376–77; 15 O.S.2011, §§ 152, 154, 160.

¶ 13 When the language is susceptible to two constructions before applying the rules of construction, the policy is ambiguous. *Id.* However, "neither forced nor strained construction will be indulged, nor will any provision be taken out of context and narrowly focused upon to create and then construe an ambiguity so as to import a [more] favorable consideration to either party than that expressed in the contract." *Id.; see* 15 O.S. 2011, § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."). "Insurance contracts are contracts of adhesion," which are interpreted most strongly against the party that prepared the contract. *Wilson v. Travelers Ins. Co.,* 1980 OK 9, ¶ 8, 605

P.2d 1327, 1329. We will not impose coverage if it is clear from the policy language that loss from a particular risk is not covered. *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.,* 2005 OK 65, ¶ 6, 148 P.3d 832, 835–36.

¶ 14 Plaintiffs' policy expressly provides distinct coverage for real and personal property. With regard to real property, the policy covers "direct loss" unless specifically excluded. As to personal property, the policy covers "direct loss" caused by specific perils only. One of these named perils is loss caused by accidental discharge or overflow of water from within a plumbing system (the accidental-discharge-coverage provision).

¶ 15 In contrast, the policy explicitly states that the policy exclusions apply indiscriminately to coverage for loss to both real and personal property. One of these exclusions is "loss resulting directly or indirectly from … water which backs up through sewers or drains" (the sewer-or-drain-backup exclusion). Thus, the accidental-discharge-coverage provision covers loss to personal property but does not apply to real property coverage. Instead, loss to real property caused by accidental discharge or overflow of water from within a plumbing system is covered under the general coverage provision for real property. The sewer-or-drain-backup exclusion excludes loss to both real and personal property resulting directly or indirectly from water which backs up through sewers or drains.

¶ 16 Here, Plaintiffs ask this Court to compare the accidental-discharge-coverage provision for personal property together with the sewer-or-drain-backup exclusion for real and personal property to find an ambiguity. Relying on *Andres,* Plaintiffs argue that a reasonable person in the insured's position reading the two provisions would find that the policy simultaneously includes and excludes coverage for raw sewage damage. Plaintiffs contend that the sewer-or-drain-backup exclusion nullifies the term "overflow" in the accidental-discharge-coverage provision because "[t]he only means of ingress and egress in a plumbing system are through drains and sewers," and, accordingly, a plumbing system can overflow only through sewers and drains. Plaintiffs urge that the only way to reconcile the accidental-discharge-coverage provision with the sewer-or-drain-backup exclusion is to limit the exclusion such that loss resulting from water which backs up through sewers and drains is excluded from coverage *unless* the water is discharged or overflows from within the covered plumbing system.

¶ 17 We reject Plaintiffs' argument that the two provisions must be read together when the policy clearly and unambiguously provides distinct coverage for real and personal property. To do as Plaintiffs ask would require this Court to rewrite the terms of the policy and strike out the language limiting the accidental-discharge-coverage provision to personal property loss only. We also reject Plaintiffs' argument that a plumbing system can overflow only through drains and sewers. We agree with Defendant that the term "overflow" acts on other words in the accidental-discharge-coverage provision, including the term "appliances." Appliances such as a hot water tank, an ice maker, a sink, or a bathtub may overflow and cause property loss without involving water backing up through a sewer or a drain.[6] We cannot do as Plaintiffs request and take a policy provision out of context and then narrowly focus upon it to create and then construe an ambiguity to put Plaintiffs in a more advantageous situation than the one intended by the clear language in the contract. Thus, we find that the policy provisions at issue contain no ambiguity.

---

6. Plaintiffs point out that the examples Defendant cites have drains, and that while a bathtub can overflow without water backing up through its drain if there is an obstruction outside of the drain, the reasonable interpretation of the policy cannot provide coverage based on whether the obstruction is inside or outside of the drain. However, Plaintiffs ignore the fact that while the appliances listed by Defendant have drains, the appliances are susceptible to overflowing without water backing up through drains. For example, a hot water tank may suffer a fracture and leak, an ice maker may overflow when too much water is dispersed into the ice trays, and a sink or a bathtub may overflow when one intentionally stops the drain in order to fill the sink or bathtub and then forgets to turn off the flow of water. Accordingly, we find Plaintiffs' counter-argument unconvincing.

¶ 18 Plaintiffs also argue that the existence of cases in which other jurisdictions interpreted similar policy language and found coverage for loss caused by sewer or drain backup proves that reasonable minds could find conflicting interpretations of the policy at issue and that the policy is ambiguous.[7] However, the mere existence of a split in authority does not render the policy provisions ambiguous. *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 2005 OK 65, ¶ 6, 148 P.3d 832, 835–36.

¶ 19 Finding no ambiguity in the policy provisions at issue, we look to the plain and ordinary meaning of the policy language to determine whether Plaintiffs' loss is covered. The sewer-or-drain-backup exclusion modifies the coverage for loss to real and personal property by excluding any loss "resulting directly or indirectly from … water which backs up through sewers or drains." This is so even if the direct cause of the real or personal property loss is an overflow or discharge from within a plumbing system. The policy also modifies the coverage for loss to personal property by excluding loss caused by accidental discharge or overflow which occurs "off the residence premises." For example, if a city sewer line off an insured's property is cut, causing raw sewage and waste to back up into the sewer and ultimately overflow from an insured's toilets, the loss would be excluded under the policy. Specifically, an insured's real property loss would be excluded under the sewer-or-drain-backup exclusion because the loss resulted indirectly from a sewage backup. Similarly, an insured's personal property loss would be excluded under the sewer-or-drain-backup exclusion for the above reason. An insured's personal property loss would also be excluded under the off-premises exception to the accidental-discharge-coverage provision because the loss was caused by accidental discharge or overflow which occurred off the residence premises.

¶ 20 Here, Plaintiffs alleged real property loss only. Thus, Plaintiffs' loss is excluded from coverage if the loss resulted directly or indirectly from a sewage backup. However, we cannot complete the analysis and determine if Plaintiffs' loss is covered because the appellate record lacks a key fact. The parties dispute the source of Plaintiffs' loss, whether the plumbing system or the sewer. If the facts are as Plaintiffs allege—the source of the damage was the plumbing system—Plaintiffs' real property loss is covered under the general coverage provision for real property and is not excluded under the sewer-or-drain-backup exclusion. On the other hand, if the facts are as Defendant alleges—the source was the sewer line to Plaintiffs' property—Plaintiffs' real property loss is excluded under the sewer-or-drain-backup exclusion. We thus remand to the district court to determine the source of Plaintiffs' damage, specifically whether the source was Plaintiffs' plumbing system or the sewer line, as the denial letter contended.

¶ 21 We therefore find that the sewer-or-drain-backup exclusion does not conflict with the accidental-discharge-coverage provision to create an ambiguity to be resolved in favor of coverage. We decline to adopt the reasoning of the COCA, Division 4 in *Andres.* Finding no ambiguity in the policy, we need not address the doctrine of reasonable expectations.[8] In conclusion, we find that the district court erred in dismissing the petition in its entirety when the allegations taken as true stated a claim for breach of contract.

7. Both parties cite cases from other jurisdictions interpreting similar policy provisions to support their respective positions. Our research does not reveal a clear majority position. *Compare World Fire & Marine Ins. Co. v. Carolina Mills Distrib. Co.*, 169 F.2d 826 (8th Cir.1948), *with For Kids Only Child Dev. Ctr., Inc. v. Phila. Indem. Ins. Co.*, 260 S.W.3d 652 (Tex.App.2008).

8. The doctrine of reasonable expectations "evolved as an interpretive tool to aid courts in discerning the intention of parties when the policy language is ambiguous or when an exclusion is 'masked by technical or obscure language' or 'hidden in a policy's provisions.' " *Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, ¶ 6, 73 P.3d 865, 868 (quoting *Max True Plastering Co. v. U.S. Fid. and Guar. Co.*, 1996 OK 28, ¶ 24, 912 P.2d 861, 870). Under the doctrine, Oklahoma courts "construing an ambiguity or uncertainty in an insurance policy" look to the objectively reasonable expectations of a person in the insured's position rather than to the drafter's intentions. *Id.*

## V. BAD FAITH

¶ 22 Although we find that the district court erred in dismissing Plaintiffs' breach of contract claim, we find it necessary to address Plaintiffs' misunderstanding of the law governing the duty of good faith and fair dealing owed by an insurer to its insured. This Court first recognized the tort of bad-faith breach of contract stemming from an insurer's implicit duty to deal fairly and act in good faith with its insured in *Christian v. American Home Assurance Co.*, 1977 OK 141, ¶ 25, 577 P.2d 899, 904–05. The essence of the tort is the unreasonable, bad-faith conduct of the insurer. *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, ¶ 6, 681 P.2d 760, 761. When adopting this tort, this Court recognized that because "there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions," the tort does not prevent the insurer from reasonably withholding payment or litigating a legitimate dispute. *Christian*, 1977 OK 141, ¶ 26, 577 P.2d at 905.

¶ 23 The decisive question is whether the insurer "had a good faith belief, *at the time its performance was requested*, that it had a justifiable reason for withholding payment under the policy." *Buzzard v. McDanel*, 1987 OK 28, ¶ 10, 736 P.2d 157, 159. It is not bad faith to withhold payment when there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage. *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 17, 998 P.2d 1219, 1223. In *Skinner*, we reasoned that because a COCA opinion not ordered for publication by this Court is persuasive only and has no precedential effect, it cannot constitute the law at the time of an insurer's alleged bad faith actions. *Id.* ¶ 19, 998 P.2d at 1223–24.

¶ 24 Here, Plaintiffs argue that Defendant committed bad faith by refusing to follow *Andres v. Oklahoma Farm Bureau Mutual Insurance Co.*, 2009 OK CIV APP 97, 227 P.3d 1102, *cert. denied*, (Nov. 23, 2009). We disagree. *Andres* was not ordered for publication by this Court and constitutes persuasive authority only. Rule 1.200(c)(2), Oklahoma Supreme Court Rules, 12 O.S.2011, ch. 15, app. 1. Failure to follow a COCA opinion that did not constitute the law at the time of an insurer's resistance to payment does not constitute an act of bad faith. *Skinner*, 2000 OK 18, ¶ 19, 998 P.2d at 1223–24. Thus, the district court correctly dismissed Plaintiffs' claim that Defendant committed bad faith by refusing to follow *Andres*.

## VI. SUMMARY

¶ 25 In summary, we affirm in part, reverse in part, and remand with instructions. We agree with the district court's finding that Plaintiffs failed to allege a claim for loss to personal property. We affirm the district court's dismissal of the fraud claim. We also affirm the district court's dismissal of the bad faith claim based upon Defendant's refusal to follow *Andres*. We reverse the district court's dismissal of the breach of contract claim and remand with instructions to determine the source of the sewage backup. The district court dismissed the class-action breach of contract claim based on Plaintiffs' failure to state a claim for individual breach of contract. Because we reverse the district court's dismissal of the individual breach of contract claim, the district court must revisit the class-action breach of contract claim on remand.

**COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.**

CONCUR: COLBERT, C.J.; REIF, V.C.J.; and KAUGER, EDMONDSON, TAYLOR, COMBS, and GURICH, JJ.

CONCURS IN PART, DISSENTS IN PART: WINCHESTER, J.

DISSENTS: WATT, J.