**STATE FARM AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Melissa GREER and Frank Greer, Defendants.**

No. 70212.

Supreme Court of Oklahoma.

July 18, 1989.

James K. Secrest, II, Tulsa, for plaintiff.

Dale Warner and John S. Sharp, Tulsa, for defendants.

HODGES, Justice.

The United States District Court for the Northern District of Oklahoma has certified a question of law to this Court pursuant to the Oklahoma Uniform Certification of Questions of Law Act, 20 O.S.1981 § 1601 et seq. The question certified for answer is:

Is the definition of uninsured motor vehicle that excludes any land motor vehicle owned by any government or any of its political subdivisions or agencies void as against public policy?

We answer in the affirmative.

Frank Greer was the named insured on four policies of automobile insurance issued by State Farm Automobile Insurance Company (hereinafter "State Farm"). Three of the policies provided for uninsured motorist coverage of $25,000 per person and $50,000 per accident. The fourth policy provided for uninsured motorist coverage of $100,000 per person and $300,000 per accident. All of these policies were in effect when Greer's natural daughter, Melissa Greer, was injured while a passenger in a vehicle owned by Oklahoma State University (hereinafter "university").

Melissa Greer sued the university, the driver of the vehicle and State Farm in Payne County District Court on the theory that the university and the driver were underinsured motorists as defined by 36 O.S.1981 § 3636 at the time of the accident and, therefore, she should be entitled to the uninsured motorist coverage provided by the State Farm policies issued to Frank Greer. In response State Farm brought this action seeking declaratory relief that the university vehicle in which Melissa Greer was a passenger when the accident occurred was not an uninsured motor vehicle as defined in the State Farm insurance policies issued to Frank Greer.

The Greers contend that the definition of uninsured motor vehicle that appears in the policies and excludes any "land motor vehicle owned by any government or any of

its political subdivisions or agencies" is void as against the public policy expressed in 36 O.S.1981 § 3636.

Oklahoma has clearly mandated the inclusion of uninsured motorist coverage in automobile insurance policies by using the specific legislative language found in 36 O.S.1981 § 3636. Subsection (C) is applicable in this situation and reads as follows

(C) For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

In reviewing this language we are mindful that the insurance coverage contract required by the statute is to be liberally construed in favor of the object to be accomplished. *Aetna Insurance Company v. Zablotsky*, 481 P.2d 761 (Okla.1971). The primary purpose of including uninsured motorist coverage in an insurance policy is to protect the insured from the effects of personal injury resulting from an accident with an uninsured/underinsured motorist. *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okla.1983). More specifically, uninsured motorist coverage allows an insured to be indemnified if the insured is unable to recover fully from the negligent motorist. *Karlson v. City of Oklahoma City*, 711 P.2d 72 (Okla.1985).

Oklahoma's statutory determination of what is included under the term "uninsured motor vehicle" does not specifically exclude any class of vehicles. Other jurisdictions with statutory language similar to that of subsection (C) have found that insurance policy provisions specifically excluding government vehicles from the

category of uninsured motor vehicle are against public policy and, therefore, are void and unenforceable. *Hillhouse v. Farmers Ins. Co., Inc.,* 226 Kan. 68, 595 P.2d 1102 (1979); *Higgins v. Nationwide Mutual Insurance Co.,* 291 Ala. 462, 282 So.2d 301 (1973); *State Farm Mutual Automobile Ins. Co. v. Carlson,* 130 Ga. App. 27, 202 S.E.2d 213 (1973). Our past surveys of various Oklahoma insurance policy provisions have consistently held that language inserted by the insurer in the policy which purports to dilute the legislatively mandated uninsured motorist coverage is void and unenforceable as it violates the public policy espoused in 36 O.S. 1981 § 3636. *State Farm Mut. Auto. Ins. Co. v. Wendt,* 708 P.2d 581 (Okla.1985); *Heavner v. Farmers Ins. Co.,* 663 P.2d 730 (Okla.1983); *Lake v. Wright,* 657 P.2d 643 (Okla.1982) *Porter v. MFA Mut. Ins. Co.,* 643 P.2d 302 (Okla.1982); *Biggs v. State Farm Mut. Auto. Ins. Co.,* 569 P.2d 430 (Okla.1977).

In its brief State Farm directs our attention to *Francis v. Intern. Serv. Ins. Co.,* 546 S.W.2d 57 (Tex.1976) and *Commercial Union Ins. Co. v. Delaney,* 550 S.W.2d 499 (Ky.1977). Both cases upheld the validity of policy provisions that specifically exclude government vehicles from the category of uninsured motor vehicles. The *Francis* case is distinguishable in that the decision of the court relied on the Texas Uninsured Motorist Act language that expressly authorizes the exclusion of vehicles whose operators are uninsured and the court's finding that this exclusion was in furtherance of the purpose of the Act. The Oklahoma statute contains no such language. In *Delaney* the Kentucky Supreme Court relied on the language used in the Kentucky uninsured motorist statute which defined the term "uninsured motor vehicle" as being "subject to the terms and conditions of such [uninsured motorist] coverage ..." Nothing similar to this language is found in the Oklahoma statute. We do not find either of these cases persuasive as regards State Farm's position.

An insured must be allowed to look to the insurer when the liability limits of a negligent motorist prevent the insured from recovering fully from the injuries suffered. Allowing a provision such as the one before us to thwart that objective would be a major deviation from the original legislative intent of 36 O.S.1981 § 3636(C). This provision is a blatant attempt to limit the effect of 36 O.S.1981 § 3636. As such we must find it to be against public policy and, therefore, void and unenforceable. *Brown v. United States Auto Ass'n,* 684 P.2d 1195 (Okla. 1984).

CERTIFIED QUESTION ANSWERED.

LAVENDER, SIMMS, DOOLIN, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

HARGRAVE, C.J., concurs in result.

OPALA, V.C.J., dissents.

OPALA, Vice Chief Justice, dissenting.

The court holds today that insurers are not allowed to exclude from uninsured/underinsured motorist policy coverage vehicles owned by "any government or any of its political subdivisions or agencies." I must recede from this view.

Mandatory inclusion of coverage for the vehicles in controversy here is woven from the fiber of thin air. Nothing in § 3636 [1] commands insurers, explicitly or implicitly, to provide the protection imposed by today's opinion. In the context of UM coverage, publicly owned vehicles constitute *both statutorily and constitutionally* a totally separate class.[2] Because government tortfeasors enjoy limited liability, *all of their vehicles are by definition underinsured.* There is *no warrant in law* for prohibiting private insurers from rejecting unacceptable, grossly substandard risks which embrace vehicles whose owners stand under a distinctly separate constitutional tort liability rubric. Public tortfeasors, unlike their private counterpart,

---

**1.** 36 O.S.1981 § 3636.

**2.** See *Black v. Ball Janitorial Service, Inc.,* Okl., 730 P.2d 510, 514–515 [1986].

**944**

are shielded from *full* responsibility for the harm they deal. If indeed there is a class of vehicles in a category justifiably excludable for UM coverage purposes, it is a government-owned motor fleet.[3]

Today's pronouncement transmogrifies the § 3636 uninsured/underinsured motorist protection into a veritable insurer's *excess liability* for a nonexistent tort obligation of public bodies whose *ex delicto* accountability stands limited by law. The risk the court imposes clearly extends beyond the parameters of the legislative mandate for the class of *indemnity* regulated by § 3636.[4]

The statute (§ 3636) mandates *only indemnity*, which denotes *protection for the legal responsibility of an uninsured/underinsured third person.*[5] Today's court-mandated UM coverage extends far beyond that perimeter. It compels protection for a governmental tortfeasor's "extralegal" liability (an obligation which *exceeds* the monetary limit authorized by law).

There is yet another factor which militates strongly against today's mandatory inclusion of government-owned vehicles within the umbrella of UM protection. Section 3636 clearly contemplates and preserves the UM carrier's claim to subrogation.[6] Compelled assumption of "excess" governmental tort liability leaves the UM insurer *without* a primary obligor against whom subrogation may be pressed.

In short, I would *uphold the policy exclusion here in controversy* to the extent it relieves the UM insurer of what is, in essence, *forced assumption* of a primary obligation for that portion of the governmental tortfeasor's liability which exceeds the statutorily authorized monetary limits.

---

3. For cases from other jurisdictions that deal with the definition and the mandatory inclusion of government-owned vehicles under the uninsured/underinsured motorist coverage, see Annot.: Right of Insured, Precluded from Recovering against Owner or Operator of Uninsured Motor Vehicle because of Governmental Immunity, to Recover Uninsured Motorist Benefits, 55 A.L.R.4th 806; Annot.: Automobile Insurance: What Constitutes an "Uninsured" or "Unknown" Vehicle or Motorist, within Uninsured Motorist Coverage, 26 A.L.R.3d 883 § 12.5.

4. See *Barfield v. Barfield*, Okl., 742 P.2d 1107, 1113 [1987] (Opala, J., dissenting); *Karlson v. City of Oklahoma City*, Okl., 711 P.2d 72, 75–76 [1985] (Opala, J., dissenting).

5. UM coverage is a recognized form of indemnity. It is the insurer's primary or "first-party" contractual obligation to pay for the tortious act of another—the uninsured/underinsured motorist—who is legally responsible for payment. See *Uptegraft v. Home Ins. Co., infra* note 6 at

684–685; *State Insurance Fund v. Taron*, Okl., 333 P.2d 508, 509–510 [1958] (the court's syllabus ¶ 2); *Bill Hodges Truck Co. v. Humphrey*, Okl.App., 704 P.2d 94, 96 [1985].

6. 36 O.S.1981 § 3636(E), *infra; Porter v. MFA Mut. Ins. Co.*, Okl., 643 P.2d 302, 305 [1982]; *Uptegraft v. Home Ins. Co.*, Okl., 662 P.2d 681, 686–687 [1983].
The pertinent terms of 36 O.S.1981 § 3636(E) are:
"(E) *In the event of payment to any person under the coverage required by this section* and subject to the terms and conditions of such coverage, *the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made,* including the proceeds recoverable from the assets of the insolvent insurer. * * * [Emphasis added.]"