COATES v. PROGRESSIVE DIRECT INSURANCE CO.
2022 OK 45
Case Number: 119571
Decided: 05/03/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 45, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

JOHN RANDALL COATES Plaintiff/Appellant, Counter-Appellee,
v.
PROGRESSIVE DIRECT INSURANCE COMPANY, Defendant/Appellee, Counter-Appellant.

Appeal from the District Court of Kay County
Honorable Lee Turner, Trial Judge

¶0 John Randall Coates (Plaintiff/Appellant and Counter-Appellee) brought an action for breach of contract and breach of the duty of good faith and fair dealing against Progressive Direct Insurance Company (Defendant/Appellee and Counter-Appellant). A motorcycle collision in which motorcyclist Coates was injured is the basis of the actions. Coates was insured by Progressive under a motorcycle policy, an auto policy, and a policy providing UM coverage. Coates moved for partial summary judgment regarding his entitlement to uninsured/underinsured motorist benefits. Progressive moved for summary judgment regarding Coates' bad faith claim. Coates sought more time to conduct discovery to address Progressive's counterclaim on bad faith. The trial court granted Coates' Motion for Partial Summary Judgment, allowing his UM claim against Progressive. The trial court also granted Progressive's Motion for Summary Judgment, denying Coates' claim for breach of duty of good faith and fair dealing. The trial court denied Coates' Motion for Additional Time to Respond. We retained the appeal. We affirm the District Court's decision granting Coates' Motion for Partial Summary Judgment on the UM claim. We reverse the decisions granting Progressive's Motion for Summary Judgment and denying Coates additional time to respond to that motion.

APPEAL PREVIOUSLY RETAINED;
ORDER OF THE DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART

Simone Fulmer Gaus, Harrison C. Lujan, Jacob L. Rowe, Andrea R. Rust, FULMER SILL, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellant, Counter-Appellee.

Brad L. Roberson, Dawn M. Goeres, ROBERSON, KOLKER, COOPER & GOERES, P.C., Edmond, Oklahoma, for Defendant/Appellee, Counter-Appellant.

KUEHN, J.:

¶1 This case presents two questions: (1) is Appellee Progressive Direct Insurance Company required to pay Appellant Coates uninsured/underinsured motorist (UM) benefits, and (2) did Appellee breach a duty of good faith and fair dealing in refusing Coates' claim. We answer the first question "yes". We reverse the trial court's order denying time for discovery on the second question, and leave the initial resolution of that question to the trial court.

FACTS AND PROCEDURAL HISTORY

¶2 On August 14, 2019, Coates, riding a 1964 Triumph Bonneville motorcycle, suffered serious injuries in a collision with a vehicle driven by Mary Toney. At the time of the crash, Coates was the named insured of two separate policies with Appellee Progressive. Coates insured the Triumph motorcycle with Progressive through Motorcycle Policy No. 9261634. He had, and rejected, the opportunity to purchase additional UM coverage under the Motorcycle Policy.

¶3 Coates also had Automobile Policy No. 927561880 with liability coverage for a Dodge Ram truck. At the time he bought the Auto Policy Coates also bought uninsured/underinsured motorist (UM) coverage for $25,000 for each person and $50,000 each accident.

¶4 After the collision, Coates submitted claims for UM coverage benefits to Progressive under both policies, but quickly agreed that there were no UM benefits connected with his Motorcycle Policy. Progressive rejected Coates' UM claim for coverage bought with the Auto Policy. Progressive claimed that the Auto Policy UM coverage did not apply to the motorcycle collision, because the motorcycle was not specifically included in the Auto Policy.

¶5 Coates filed suit against Progressive for breach of contract and breach of the duty of good faith and fair dealing.

¶6 A hearing on all motions was held, and during an unrecorded telephone conference, the trial court granted Coates' partial motion for summary judgment. The trial court on a later date, denied Coates' motion for more time to respond, granted Progressive's motion for summary judgment on the issue of good faith and fair dealing and denied any pending motions as moot.

 

STANDARD OF REVIEW

 

¶7 Summary judgment claims turn on the law because there is no material factual dispute. While the trial court necessarily considers the facts in deciding such a claim, the actual question before the court is a pure matter of law. H2K Technologies v. WSP USA, 2021 OK 59de novo. Id.

COATES IS ENTITLED TO UM BENEFITS UNDER THE AUTO POLICY

I. UM Coverage is governed by public policy considerations.

¶8 "When interpreting automobile insurance contracts, the court strives to strike a balance between freedom of contract principles and the state's interest in protecting the public." Ball v. Wilshire Ins. Co., 2009 OK 38221 P.3d 717Id.

¶9 UM coverage is recommended but not required. However, the Legislature has made it clear that, as a matter of public policy, insurers must offer UM coverage. 36 O.S. § 363636 O.S. § 3636Lane v. Progressive Northern Ins. Co., 2021 OK 40494 P.3d 345Id., ¶ 13, 494 P.3d at 350 (quoting State Farm Auto Ins. Co. v. Greer, 1989 OK 110777 P.2d 941Morris v. America First Ins. Co., 2010 OK 35240 P.3d 661

¶10 The distinction in the subject of coverage -- vehicle versus person -- is essential. Every driver must carry liability insurance pursuant to 47 O.S. § 7-601must be offered simultaneously with the purchase of a liability policy. 36 O.S.Supp.2014, § 3636

¶11 As UM coverage is for persons and not specific vehicles, the coverage follows the person. "Follows the person" means that, if an insured person buys UM coverage when the coverage is offered, that UM coverage will apply to accidents and injuries to that person, regardless of whether a specific vehicle involved in an accident was insured under the liability policy bought at the same time. The only circumstance under which UM coverage does not apply is where an insured is injured while occupying a motor vehicle "owned by, or available for the regular use of, an insured, resident spouse, or resident relative", and that motor vehicle "is not insured by a motor vehicle insurance policy." 36 O.S.Supp.2014, § 3636 to include a policy for UM coverage. Morris, 2010 OK 35

¶12 However, that interpretation is not exclusive. The plain language of the statute -- "a motor vehicle insurance policy" -- means what it says. It may include either, or both, liability and UM coverage. Both parties agree that the Triumph was covered by a liability policy. Therefore, since the UM coverage follows the person, and a liability policy was purchased, Progressive must offer some other justification for denying UM coverage.

II. Progressive's policy exclusion.

¶13 Progressive argues that Section 3636(E) allows it to deny UM coverage to an insured who purchased UM coverage through another liability policy for another vehicle, regardless of whether the insured has UM coverage through another policy. Progressive argues that since Coates rejected UM coverage under the motorcycle policy, and he was injured while riding the motorcycle, this statutory exclusion applies. This reflects a significant misunderstanding of Section 3636(E).

¶14 Progressive based its denial of Coates' UM claim on exclusionary language it drafted in its Auto Policy under Part III, 1(b), exclusions to UM coverage. That provision states that UM coverage under the policy will not apply:

"(1) to bodily injury sustained by any person while using or occupying: (b) a motor vehicle that is owned by or available for the regular use of you, a relative, or a rated resident. This exclusion does not apply: (i) to a covered auto that is insured under this Part III, or (ii) to a relative or rated resident who is insured for uninsured motorist coverage under any other motor vehicle insurance policy he or she has obtained."

Exclusion 1(b) thus appears to exclude from UM coverage injuries which occur in the insured's own motor vehicle, even though the insured has paid for coverage, unless coverage for that particular vehicle listed in the liability policy was bought at the same time as the UM coverage. Put another way, Progressive has written an exclusion which follows the vehicle, not the person.

¶15 The United States District Court for the Northern District of Oklahoma considered this exclusion in Vickers v. Progressive Northern Insurance Company, 353 F.Supp.3d 1153 (N.D. Okla. 2018). While not binding on this Court, the Vickers general analysis of Exclusion 1(b) is persuasive.Vickers correctly emphasizes that, when considering whether a policy exclusion violates Section 3636(E), one controlling factor is whether an insured has had the opportunity to purchase his own UM coverage. Vickers, 353 F.Supp.3d at 1161. In Vickers, the insured was a resident relative driving a vehicle owned and insured for UM coverage by his father; the resident relative himself had no opportunity to purchase UM coverage and was therefore entitled to rely on the doctrine that UM coverage follows the person, not the vehicle. Id. Here, of course, the insured himself both purchased liability and UM coverage from Progressive and made the claim for UM coverage on his UM policy after he was injured in the collision. As per Vickers, UM coverage under Section 3636 is "for the protection of persons insured thereunder." Id. at 1161-62; 36 O.S. § 3636

¶16 People who pay for UM coverage should get what they paid for. Lane, 2021 OK 40Morris, 2010 OK 35

III. Conclusion.

¶17 The facts underlying cases involving motor vehicle injuries and UM coverage are as numerous and varied as the number of vehicles and drivers in Oklahoma. Consequently, this Court has been called on to interpret Section 3636 in various complex situations involving drivers, passengers, owners, and multiple insurers. By contrast, Coates bought two liability insurance policies from Progressive, one for a motorcycle and one for a truck. He also bought a UM policy. He is entitled to the benefit of the UM coverage that he bought and paid for.

COATES SHOULD HAVE THE OPPORTUNITY TO CONDUCT DISCOVERY
ON HIS CLAIM THAT PROGRESSIVE ACTED IN BAD FAITH

¶18 As both parties agree, insurance companies have a duty to deal fairly and in good faith with their insured customers. Coates claimed below that Progressive's decision to deny his UM claim was made in bad faith and asked for time to conduct discovery on this issue. Coates sought discovery of documents and records that might show Progressive's internal decision-making process, specifically including whether Progressive relied on the internal guidelines for Exclusion 1(b) described above in n.3. The trial court denied Coates' request for a continuance to conduct discovery and granted Progressive's motion for summary judgment on the issue of good faith. Coates claims on appeal that both decisions were in error.

¶19 To succeed in bringing a bad faith claim, Coates must show (a) he was entitled to coverage under the insurance policy; (b) Progressive's failure to pay the claim was unreasonable under the circumstances; (c) Progressive did not deal with Coates fairly and in good faith; and (4) Progressive's violation of the duty of good faith and fair dealing was the direct cause of Coates' injury. Ball v. Wilshire Ins. Co., 2009 OK 38221 P.3d 717Id., ¶ 22, 221 P.3d at 725. The mere fact that an insurer denies or litigates a claim will not show bad faith. Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 2000 OK 5511 P.3d 162

¶20 Coates essentially argues that the law was clearly on his side, Progressive knew it, and Progressive delayed, rejected, and litigated his claim to avoid paying benefits to which he was entitled. This Court, the Court of Civil Appeals, and various federal courts have in the past reviewed the effect of Section 3636(E) on various aspects of Progressive's Exclusion 1(b). These opinions are often complicated and based on extremely specific facts. While some cases involve Exclusion 1(b), and some involve similar (though not identical) facts, no controlling case had at the time Progressive rejected Coates' claim, resolved this issue. Vickers, 353 F.Supp.3d at 1164; Ball, 2009 OK 38Barnes, 2000 OK 55

¶21 However, this does not end our analysis. Coates also argues that, had he had the opportunity for discovery, he might have found evidence that Progressive's particular conduct toward Coates was deliberately made in bad faith. Coates filed his original petition against Progressive in the district court on February 5, 2020, and Progressive filed its motion for summary judgment on June 10, 2020. Coates filed his motion requesting more time to respond to that motion, and to conduct discovery, on July 9, 2020. That is, the case had been at issue for only a few months, subject to COVID-19 pandemic closings and special procedures. No pretrial conferences or other deadlines had been scheduled, there had been no discovery, and the first hearing in the case was held on the day the motion was filed. After the filing of this motion, there were further unavoidable pandemic-related delays in the case, and the next full hearing was on October 8, 2020. It was at this time that the trial court determined that Progressive did not act in bad faith, given the lack of clear guidance from case law, and denied the motion for continuance and discovery as moot.

¶22 This decision was an abuse of discretion. Summary judgment is appropriate where there is no contested issue of material fact. Coates consistently contested the facts surrounding Progressive's summary judgment motion on the bad faith claim. He asked for a reasonable amount of time to conduct discovery to support his argument that Progressive acted in bad faith. Here, the case had been pending for a short period of time. No formal discovery had occurred. As required by both statute and district court rules, Coates' counsel provided an affidavit asking for discovery on particular issues and items directly related to the issue of bad faith. 12 O.S. § 2056Rules of the District Courts of Oklahoma, 12 O.S. Ch. 2 App. R. 13(d). This procedure allows the parties to present enough information for the trial court to intelligently exercise its discretion in granting or denying summary judgment. While there was no controlling case favoring Coates' UM claim, there was enough uncertainty in the case law and, as the trial court ultimately concluded, enough law supporting Coates' position, to warrant inquiry into Progressive's actual decision to deny this claim.

¶23 Without expressing an opinion on the issue of whether Progressive acted in bad faith at the time it denied Coates' claim, we find that the trial court abused its discretion in refusing Coates' request for a continuance to conduct discovery on the issues of good faith and fair dealing.

APPEAL PREVIOUSLY RETAINED;
ORDER OF THE DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART.

CONCUR: Kauger, Edmondson, Combs, Gurich and Kuehn, JJ.

CONCUR IN PART and DISSENT IN PART: Darby, C.J., and Winchester

(by separate opinion) and Rowe, JJ.

DISSENT: Kane, V.C.J. (by separate opinion)

FOOTNOTES

A Journal Entry of judgment was filed after all motions were resolved.

Vickers, 353 F.Supp.3d at 1157. These guidelines appear to focus on the status of the motor vehicle at issue, rather than the status of the person seeking UM coverage. Insofar as Progressive may have relied on this focus in denying Coates UM coverage, this also would reflect a misunderstanding of Section 3636(E).

Vickers involved multiple insurance companies and policies, and a driver who was the named insured on some policies but not others. Considering only those particular facts, Vickers concluded that under those circumstances Exclusion 1(b) violated Section 3636(E) and Oklahoma's public policy surrounding UM coverage. This conclusion is not relevant to the issue presented here, and we do not rely on it in our analysis.

 

 

Winchester, J., with whom Rowe, J. joins, concurring in part, dissenting in part:

¶1 I concur with this Court's ruling entitling John Randall Coates (Coates) to uninsured/underinsured motorist (UM) benefits. However, I dissent to the reversal of summary judgment regarding Coates's bad faith claim against Progressive.

¶2 When adopting the tort of bad faith, this Court recognized that because "there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions," the tort does not prevent the insurer from reasonably withholding payment or litigating a legitimate dispute. Christian v. Am. Home Assurance Co., 1977 OK 141577 P.2d 899See, e.g., Porter v. Okla. Farm Bureau Ins. Co., 2014 OK 50330 P.3d 511Ball v. Wilshire Ins. Co., 2009 OK 38221 P.3d 717Skinner v. John Deere Ins. Co., 2000 OK 18998 P.2d 1219

¶3 Here, a legitimate dispute existed as to (1) whether Progressive's Exclusion 1(b) applied to Coates's automobile policy UM claim, and (2) whether Coates was entitled to UM benefits under his automobile policy even though he rejected and paid no premium for UM coverage under his motorcycle policy. The majority agrees that there was no controlling case that resolved these issues at the time Progressive rejected Coates's claim. Therefore, Progressive had a "good faith belief . . . that it had a justifiable reason for withholding payment under the policy." Ball, 2009 OK 38

¶4 With the Court's decision here, it settles this UM issue by expanding coverage. However, Progressive did not act in bad faith at the time it denied Coates's claim. Summary judgment was therefore appropriate on the bad faith claim against Progressive, and the district court did not err in refusing Coates's request for additional discovery.

 

 

KANE, V.C.J., dissenting:

¶1 Oklahoma law is clear that "[i]f there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith." Ball v. Wilshire Ins. Co., 2009 OK 38221 P.3d 717See also, Porter v. Okla. Farm Bureau Ins. Co., 2014 OK 50330 P.3d 511Christian v. Am. Home Assur. Co., 1977 OK 141577 P.2d 899Davis v. Mid-Century Ins. Co., 311 F.3d 1250 (10th Cir. 2002) (reversing trial court's denial of insurer's motion for judgment as a matter of law on appellee's bad faith claim because there was no settled law on the coverage issues presented).

¶2 "The critical question in a bad faith tort claim is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding [or delaying] payment under the policy.'" Ball, 2009 OK 38Buzzard v. McDaniel, 1987 OK 28736 P.2d 157

Under the facts of this case, there are two legitimate disputes: (1) whether Progressive's Exclusion 1(b) applied to Coates' automobile policy UM claim, and (2) whether Coates was entitled to UM benefits under his automobile policy even though he rejected and paid no premium for UM coverage under his motorcycle policy.

¶3 As Justice Winchester points out, the Majority concedes there was no controlling case that resolved these issues at the time Progressive rejected Coates' claim. As a result, Progressive did not act in bad faith at the time it denied Coates' claim. Because Progressive had "a good faith belief, at the time . . . for withholding payment . . . " under the policy, the district court did not err in granting Progressive's Motion for Summary Judgment on Coates' bad faith claim, nor did it err in refusing Coates' request for additional discovery. See Ball, 2009 OK 38

¶4 I also respectfully dissent with the Majority's conclusion affirming the trial court's ruling entitling Coates to UM benefits. We are called to "strike a balance between freedom of contract principles and the state's interest in protecting the public" when interpreting automobile insurance contracts. Ball, 2009 OK 38

¶5 In this case, the Majority focuses on "the distinction in the subject coverage" -- i.e., the distinction between liability insurance and UM coverage. See Majority Op. ¶ 10. Certainly, UM coverage is separate and distinct from liability insurance. See Lane v. Progressive Northern Ins. Co., 2021 OK 40494 P.3d 345 State Farm Auto Ins. Co. v. Greer, 1989 OK 110777 P.2d 94147 O.S. § 7-601See 36 O.S. § 3636

¶6 When it comes to UM coverage, the Legislature has determined as a matter of public policy that insurers must offer UM coverage simultaneously with the purchase of a liability policy in order to "protect the insured from the effects of personal injury resulting from an accident with an uninsured/underinsured motorist." Lane, 2021 OK 40see also 36 O.S.Supp.2014 § 3636Lane, 2021 OK 40

¶7 Despite the desirable public policy favoring UM coverage, this Court has consistently upheld UM exclusions as consistent with Oklahoma's UM statute. See id. ¶ 5, at 354-55 (J. Rowe, dissenting); see also, Ball, 2009 OK 38See Lane, 2021 OK 40May v. Nat'l Union Fire Ins. of Pittsburgh, Pa., 1996 OK 52918 P.2d 43

¶8 In this case, it is undisputed that Coates purchased a motorcycle policy and rejected UM coverage under that motorcycle policy. This simple fact cannot be overlooked. It is key to the entire analysis. Looking back at our case law and the strong public policy in favor of providing UM coverage, we cannot ignore Coates' rejection of UM coverage for the motorcycle policy. It was an affirmative and intentional act -- one that courts look to when considering whether a policy exclusion violates Section 3636(E). See Vickers v. Progressive Northern Ins. Co., 353 F.Supp.3d 1153 (N.D. 2018), Shepard v. Farmers Ins. Co., Inc., 1983 OK 103678 P.2d 250Conner v. Am. Commerce Ins. Co., 2009 OK CIV APP 61216 P.3d 850

¶9 In Vickers v. Progressive Northern Insurance Company, 353 F.Supp.3d 1153 (N.D. 2018), the United States District Court for the Northern District of Oklahoma considered the same exclusion in this case [Exclusion 1(b)] and correctly emphasizes that when considering whether a policy exclusion violates Section 3636(E), one controlling factor is whether an insured has had the opportunity to purchase his own UM coverage. Vickers, 353 F.Supp.3d at 1161. In Vickers, the insured was the father and the driver involved in the accident was a resident-relative of the father. Id. Because the driver had no opportunity to purchase UM coverage for himself, the Vickers court held the driver was entitled to UM benefits purchased by the insured (his father) because Section 3636(B) is "for the protection of persons insured thereunder." 36 O.S. § 3636Vickers, 353 F.Supp.3d at 1161-62.

¶10 The Majority cites to Vickers to support its conclusion that Coates is entitled to UM coverage; however, the facts of Vickers do not support this conclusion. Unlike the insured in Vickers who paid for UM coverage, Coates first rejected UM coverage when he purchased his motorcycle policy. The Majority misses this important fact and jumps straight to the conclusion that because Coates eventually "both purchased liability and UM coverage from Progressive and made the claim for UM coverage on his UM policy after he was injured in the collision" he is entitled to UM coverage. See Majority Op. ¶ 15. This is a faulty conclusion based solely on Coates' second policy of insurance with Progressive -- his auto policy wherein he did purchase UM coverage. There is no discussion by the Majority about the cause and effect of Coates' two separate policies of insurance, nor his first rejection of UM coverage with the motorcycle policy, followed by his acceptance of UM coverage with the auto policy at a later date. None of these important facts were present in Vickers. Instead, the Majority expands UM coverage in our State with absolutely no parameters.

¶11 By way of example, the Majority's analysis produces an illogical result in that it allows a driver to purchase an auto policy and reject UM coverage (and not pay for it), but then at a later date purchase a second auto policy that identifies a single automobile and pay for UM coverage, and then go on to claim months or even years later, that the driver has UM coverage for every vehicle the driver owns regardless of whether the automobile is specifically identified in the policy and regardless of the number of vehicles the driver owns. This is true in this example despite the fact that the driver has only paid for UM coverage under one policy of insurance that identifies a single automobile. Progressive refers to this intentional type of behavior as "piggybacking" -- because in this case, although Coates rejected UM coverage under his motorcycle policy with Progressive, he nevertheless seeks UM coverage involving his motorcycle accident under his auto policy because he paid for UM coverage under the auto policy. The auto policy did not identify the motorcycle, thus Coates is attempting to "piggyback" the motorcycle onto the auto policy that had UM coverage.

¶12 This result does not place the insured in the same position as he would have been in if the negligent uninsured motorist had complied with Oklahoma laws concerning financial responsibility. See May, 1996 OK 52

FOOTNOTES

Christian v. Am. Home Assur. Co., 1977 OK 141