**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BRYAR G. JOHNSON,

      Plaintiff - Appellant,

v.

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE
COMPANY, d/b/a Metlife Auto and
Home,

      Defendant - Appellee.

No. 23-6061

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:21-CV-00490-JD)**
_____

Rex Travis of Travis Law Office, Oklahoma City, Oklahoma, for Plaintiff -
Appellant.

Michael Woodson (Nevin R. Kirkland with him on the brief) of Edmonds Cole
Law Firm, PC, Oklahoma City, Oklahoma, for Defendant - Appellee.
_____

Before **HARTZ**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

    Bryar Johnson was seriously injured in a traffic accident in Tulsa,

Oklahoma. First, a lane-changing car collided with his motorcycle, and then

another car ran him over and dragged him down the road. After collecting the liability limits from the other two drivers' insurance policies, Bryar claimed uninsured motorist (UM) coverage from his parents' automobile policy with Metropolitan Property and Casualty Insurance Company (MetLife). MetLife denied Bryar's claim under an exclusion to his parents' policy that denies coverage to resident-relative insureds injured while operating their own motor vehicle that is "not insured by a motor vehicle insurance policy." App. vol. I, at 68. Though Bryar carried liability insurance on his motorcycle, he had declined to purchase the offered UM coverage.

Guided by Oklahoma's UM caselaw interpreting its motor-vehicle-insurance statutes, we conclude that MetLife's exclusion does not defeat UM coverage for Bryar. Because Bryar carried liability insurance on his motorcycle, we hold that his motorcycle was "insured by a motor vehicle insurance policy." In its UM exclusion, MetLife chose not to require that resident-relative insureds (as Bryar was) carry UM coverage on their own motor vehicles to be eligible for UM benefits on other applicable policies (as his parents' policy was to him). That means MetLife owes Bryar UM coverage from his parents' policy. For this and the reasons below, we affirm in part, reverse in part, and remand.

**BACKGROUND**

## I.    Factual Background

In November 2018, Bryar was in an auto accident involving two other cars while riding his motorcycle in Tulsa, Oklahoma.[1] The first motorist changed lanes immediately in front of Bryar's motorcycle, causing Bryar to collide with the rear of the car. The collision ejected Bryar off his motorcycle onto the road. Then, a second motorist ran over Bryar and dragged him about 150 feet before stopping.

Both motorists paid out the state-mandated $25,000 per person liability limits on their auto policies. *See* Okla. Stat. tit. 47, § 7-324. Because Bryar's injuries exceeded this amount, Bryar sought additional UM benefits as a resident-relative covered under his parents' (the Johnsons') MetLife policy.[2] But MetLife denied Bryar's UM claim, asserting that its policy excluded coverage to resident-relatives operating their own motor vehicles without UM

---

[1] We call Bryar by his first name throughout this opinion to avoid confusion with his parents, whom we call "the Johnsons."

[2] The policy defines "Uninsured Motor Vehicle" as a motor vehicle for which the "policy applies at the time of the accident but the limit for bodily injury liability is less than the amount of the claim." App. vol. II, at 25. Technically, we understand this type of coverage to be *under*insured motorist coverage because, though the other vehicles were insured, their liability limits were too low to cover the cost of Bryar's injuries. But MetLife's policy folds such vehicles into its definition of "uninsured motor vehicle," so we stick with that term as used by the policy and the parties. *Id.*

3

coverage. So even though Bryar had bought liability insurance for the motorcycle with GEICO, MetLife required that he carry UM coverage, too.

The MetLife policy includes an endorsement for UM coverage up to $250,000 per person, including relatives. The policy defines "relative" as "a person related to [the policyholder] by blood, marriage or adoption . . . who resides in [the policyholder's] household." App. vol. I, at 26 ¶ 13. MetLife has stipulated that Bryar met this definition at the time of the accident.[3] Yet, MetLife denied Bryar's UM claim under the following policy exclusion:

> **We** do not cover you or a **relative** who owns, leases or has available for their regular use, a **motor vehicle** if such **motor vehicle** is not insured by a motor vehicle insurance policy.

*Id.* at 68.

Bryar had bought a motor vehicle insurance policy with GEICO providing liability coverage for his motorcycle, but he had declined GEICO's offer for UM coverage. Based on that, MetLife contended that the motorcycle had not been "insured by a motor vehicle insurance policy" at the time of the accident. *Id.* So, MetLife denied Bryar's UM claim.

## II.    Procedural Background

Bryar sued MetLife in Oklahoma state court for breach of contract. Bryar claimed that he was entitled to recover benefits as an insured under the Johnsons' policy because he carried a liability-insurance policy with GEICO.

---

[3] The MetLife policy also listed Bryar as a household driver.

4

He argued that this satisfied MetLife's requirement that he carry a "motor vehicle insurance policy" on his motorcycle. App. vol. I, at 15. MetLife removed the case to federal district court, based on diversity jurisdiction.[4] MetLife then moved for summary adjudication and judgment that "[MetLife's] policy contains a valid and enforceable exclusion under Oklahoma law" and summary judgment on Bryar's breach-of-contract claim.[5] *Id.* at 70. Bryar cross-moved for partial summary judgment "that there is $250,000 underinsured motorist coverage for [his] injuries." App. vol. II, at 1. Almost two months after Bryar moved for partial summary judgment, he filed for leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2) to add a claim for bad faith.[6]

Before the district court held a hearing on the competing motions, the parties stipulated to the few material facts, enabling the court to turn to the legal issue of insurance coverage. Reviewing Oklahoma's UM statute, Okla. Stat. tit. 36, § 3636, and the applicable caselaw, the court ruled for MetLife.

---

[4] Bryar is an Oklahoma resident; MetLife is incorporated and has its principal place of business in Rhode Island; the amount in controversy ($250,000) exceeds $75,000.

[5] MetLife styled its motion as a "Motion for Summary Adjudication," but the district court treated it as a motion for summary judgment. So we too treat MetLife's motion as a motion for summary judgment.

[6] Bryar alleged that "[t]he language relied upon [by MetLife] denies coverage when the vehicle an insured is operating is not insured for UM coverage, specifically. Because this language is not found in MetLife's policy, the denial is improper, and is done in bad faith." App. vol. II, at 87.

The court found it dispositive that "[a]lthough [Bryar] was a resident relative and insured under his parents' policy, [he] had the opportunity to purchase his own UM coverage, but he declined it." App. vol. I, at 150. In other words, the court read Oklahoma law as requiring Bryar to either obtain liability insurance *and* UM coverage on his motorcycle policy or forego UM coverage under his parents' policy. *See id.* (citing *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 730 (Okla. 2009); *Vickers v. Progressive N. Ins. Co.*, 353 F. Supp. 3d 1153, 1161 (N.D. Okla. 2018)). That is, the district court read "motor vehicle insurance policy" as requiring UM coverage too.

Next, the district court denied Bryar's motion to amend his complaint. It ruled that the bad-faith claim was untimely under Oklahoma's two-year statute of limitations for claims arising in tort, making Bryar's motion to amend his complaint futile.

In the end, the court granted MetLife's motion for summary judgment, denied Bryar's motion for partial summary judgment, denied Bryar's motion for leave to amend, and entered judgment for MetLife.

Bryar filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291.

## III.   Legal Background

In 1968, the Oklahoma legislature enacted Okla. Stat. tit. 36, § 3636, which governs "Uninsured motorist coverage." The statute requires all auto-insurance carriers to offer policyholders UM coverage with any general liability

6

auto policy. *See id.* § 3636(A), (B). Policyholders may reject the UM coverage in writing. *See id.* § 3636(G).

If a policyholder accepts UM coverage, then the insurance carrier must provide such coverage "for the protection of persons insured thereunder . . . to recover damages from owners or operators of uninsured motor vehicles . . . because of bodily injury." *Id.* § 3636(B).[7] But § 3636(E) permits insurance carriers to exclude that otherwise-guaranteed UM coverage to insureds in limited situations. Section (E) provides:

> For purposes of this section, there is no coverage for any insured while occupying a motor vehicle owned by, or furnished or available for the regular use of the named insured, a resident spouse of the named insured, or a resident relative of the named insured, if such motor vehicle is not insured by a motor vehicle insurance policy.

Tracking § 3636(E), MetLife's UM endorsement excludes coverage to insureds as follows:

> We do not cover you or a relative who owns, leases or has available for their regular use, a motor vehicle if such motor vehicle is *not insured by a motor vehicle insurance policy*.

App. vol. I, at 68 (emphases omitted and added).

Section 3636 has spawned much Oklahoma state and federal caselaw, laying the boundaries for UM coverage and coverage exclusions under § 3636(E). But the Oklahoma Supreme Court has not decided the precise issue

---

[7] The statute's definition of "uninsured motor vehicle" includes "an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim." Okla. Stat. tit. 36, § 3636(C).

presented in this appeal. So "we must determine what decision the state court would make if faced with the same facts and issue." *Phillips v. State Farm Mut. Auto. Ins. Co.*, 73 F.3d 1535, 1537 (10th Cir. 1996) (cleaned up). Oklahoma state courts and federal courts have produced a consistent line of authority that informs our analysis. *See Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1012 (10th Cir. 2021) (advising that "a clear trend" of state law "can help give guidance to how we should apply state law" (citation omitted)).

## DISCUSSION

Bryar appeals the district court's denial of his motion for partial summary judgment and its grant of summary judgment for MetLife, as well as the court's denial of his motion to amend his complaint to assert a bad-faith-insurance claim.

## I.     Motion for Summary Judgment

We review de novo a district court's grant of summary judgment, "applying the same legal standard the district court used." *Edens v. Netherlands Ins. Co.*, 834 F.3d 1116, 1120 (10th Cir. 2016) (citation omitted). The parties stipulated to the material facts, so we can immediately consider whether Bryar is entitled to UM coverage under MetLife's policy as a matter of law. *See* Fed. R. Civ. P. 56(a). Because this is a diversity-of-citizenship case, we apply Oklahoma's substantive law in interpreting MetLife's policy. *Genzer v. James River Ins. Co.*, 934 F.3d 1156, 1167 (10th Cir. 2019).

The district court granted MetLife summary judgment on Bryar's breach-of-contract claim, reasoning that Bryar "had an opportunity to purchase UM coverage for his personal protection and declined [it] in writing." App. vol. II, at 151. According to the court, this meant that MetLife "ha[d] no coverage obligations to [him]." *Id.* at 151–52. On appeal, Bryar maintains that MetLife owes him UM coverage up to $250,000 because his motorcycle in fact carried the "motor vehicle insurance policy" required by § 3636(E) and MetLife's policy. Op. Br. at 8.

### A.    MetLife's UM exclusion does not apply to Bryar.

The UM exclusion in MetLife's policy bars coverage to relative insureds who are injured while occupying their own motor vehicle if that vehicle "is not insured by a motor vehicle insurance policy." App. vol. I, at 68. Thus, this appeal turns on a narrow legal issue—the meaning of "not insured by a motor vehicle insurance policy." *Id.* If Bryar's motorcycle indeed was "not insured by a motor vehicle insurance policy," then MetLife's exclusion applies. But if it was, then MetLife cannot deny Bryar coverage based on the exclusion.

The Oklahoma Supreme Court recently reviewed a UM exclusion nearly identical to the one in MetLife's policy.[8] *Coates v. Progressive Direct Ins. Co.*,

---

[8] The Oklahoma Supreme Court decided *Coates* while this litigation was ongoing in the district court. At the time, Bryar filed a notice of supplemental authority with the district court. The court ordered supplemental briefing from the parties to discuss *Coates*'s impact on the case but, in issuing its decision, found that *Coates* "d[id] not change this analysis." App. vol. II, at 146.

(*footnote continued*)

9

512 P.3d 345, 348–49 (Okla. 2022). In *Coates*, the plaintiff carried two auto policies on two motor vehicles (a motorcycle and a truck) with the same insurance carrier. *Id.* at 347. On the motorcycle policy, the insured obtained liability coverage but declined UM coverage. *Id.* On the truck policy, he obtained both liability and UM coverage. *Id.* The truck policy contained a UM exclusion that denied coverage "where an insured is injured while occupying a motor vehicle 'owned by, or available for the regular use of, an insured, resident spouse, or resident relative,' and that motor vehicle '*is not insured by a motor vehicle insurance policy*.'" *Id.* at 348 (emphasis added) (quoting Okla. Stat. tit. 36, § 3636(E)).

After the insured was injured while riding his motorcycle, he claimed UM coverage from his truck policy. *Id.* at 347. But based on the above exclusion, the insurance carrier denied the plaintiff the UM coverage. *Id.* The plaintiff sued for breach of contract, and the case eventually made its way to the Oklahoma Supreme Court. *Id.* at 347–48.

The Oklahoma court ruled that the insurance carrier could not apply the truck policy's UM exclusion in determining that the motorcycle was "not insured by a motor vehicle insurance policy." *See id.* at 348–49. This was so because the motorcycle policy carried liability coverage, which meant it was

---

Specifically, the court remarked that "*Coates* is factually distinguishable from the instant case because *Coates* had UM coverage on a separate vehicle," whereas in this case "plaintiff was offered the opportunity to purchase UM coverage, but he declined to do so." *Id.*

insured by "a motor vehicle insurance policy," even without UM coverage. *Id.* at 349. In short, the court ruled that the term "motor vehicle insurance policy" does not require insureds to carry UM *and* liability coverage on their vehicles. *Id.* Instead, insureds meet the "motor vehicle insurance policy" requirement under the § 3636(E) exclusion by purchasing "*either, or both, liability and UM coverage.*"[9] *Id.* (emphasis added). Essentially, the court decided that "'a motor vehicle insurance policy'—means what it says." *Id.* Thus, the court ruled that the insured was "entitled to the benefit of the UM coverage that he bought and paid for." *Id.* at 350.

MetLife argues that there is a "critical distinction between the facts of this case and *Coates*": instead of claiming benefits under his own UM policy, Bryar seeks to recover as a resident insured under his parents' policy.[10] Resp.

---

[9] Though the court acknowledged that it had once "interpreted the term 'motor vehicle policy' . . . to include a policy for UM coverage," the court clarified, "that interpretation is not exclusive." *Coates*, 512 P.3d at 349–50 (citing *Morris v. Am. First Ins. Co.*, 240 P.3d 661, 664 (Okla. 2010)).

[10] MetLife also contends that "if *Coates* had held an exclusion, which 'mirrored' [§ 3636(E)] invalid, it would have had the effect of abrogating the statute itself." Resp. Br. at 5. That argument stretches *Coates* beyond its use in this appeal. Our analysis focuses solely on MetLife's application of the UM exclusion to Bryar's claim. We do not extend *Coates* beyond that limited purpose, nor should any of the discussion in this opinion be construed as commentary on the general validity of MetLife's UM exclusion under § 3636(E).

11

Br. at 8. But that distinction is meaningless.[11] *Coates* did not condition its ruling on the insured's paying the premiums on the UM policy. This leaves us unpersuaded by MetLife's contention that, essentially, Bryar needed to pay UM premiums to keep his UM coverage.[12] Instead, our concern lies with Bryar's enduring status as an insured under the policy, and whether MetLife's UM exclusion applies to strip him of the UM coverage he would otherwise be owed. In answering that question, *Coates* quickly sharpens into focus as the leading state-law authority. The UM exclusion in *Coates* exactly matches the plain language of MetLife's exclusion: it denied UM coverage to resident-relative-owned vehicles "not insured by a motor vehicle insurance policy." 512 P.3d at 348. So in applying Oklahoma law, we import the Oklahoma Supreme Court's interpretation of that identical language. *See Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) ("When the federal courts are

---

[11] We also recognize that the plaintiff in *Coates* held his liability and UM policies with the same insurance carrier, while Bryar and his parents hold their policies with different insurance carriers—GEICO and MetLife. MetLife doesn't raise this factual distinction in its brief. But even if it had, the fact of multiple insurance carriers would not alter our analysis. Oklahoma courts allow an insured to recover UM benefits from an insurance carrier different than the one that covered the liability limits on the accident vehicle. *See, e.g.*, *Morris*, 240 P.3d at 662 (plaintiff carried liability insurance on the accident vehicle with his employer's insurer; yet he claimed and recovered UM benefits under his mother's policy with America First Insurance Company).

[12] In arguing against Bryar's receiving benefits, MetLife emphasizes that "*Plaintiff has never paid for UM coverage.*" Resp. Br. at 13.

called upon to interpret state law, the federal court must look to rulings of the highest state court . . . ." (citation omitted)).

To start, MetLife stipulated that its policy covers Bryar as the Johnsons' "relative," meaning that Bryar can recover UM benefits unless the exclusion applies. App. vol. I, at 27 ¶ 15. MetLife's exclusion requires relative insureds to have carried "motor vehicle insurance," *id.* at 68, on the vehicle they owned and occupied when injured, which we know from *Coates* includes policies that carry only liability coverage, *see* 512 P.3d at 349. Bryar bought liability coverage on the motorcycle, and MetLife offers no "other justification" for denying his claim. *Coates*, 512 P.3d at 349. We therefore conclude that Bryar's liability insurance with GEICO saves him from MetLife's exclusion.

**B.    MetLife unduly emphasizes Bryar's previous opportunity to buy UM coverage.**

Before this court, MetLife argues that Bryar cannot claim UM coverage under the Johnsons' policy, because he had the opportunity to purchase his own UM coverage with GEICO and declined it. According to MetLife, Bryar's case is indistinguishable from *Conner v. American Commerce Insurance*, where the Oklahoma Court of Civil Appeals concluded that the plaintiff couldn't recover under his parents' UM policy because "[e]ven though [he] did obtain liability insurance" on his motorcycle, he had rejected UM coverage. 216 P.3d 850, 851 (Okla. Civ. App. 2009). Likewise, MetLife notes, in *Morris v. America First Insurance Co.*, the Oklahoma Supreme Court granted the plaintiff recovery

13

under his mother's UM policy because the plaintiff had separately purchased UM on other vehicles he owned, which Bryar did not do. 240 P.3d 661, 662, 664 (Okla. 2010). Finally, MetLife adds that in *Vickers v. Progressive Northern Insurance Co.*, the Northern District of Oklahoma stated that "[t]hese decisions turn . . . on the resident insured's opportunity to purchase his or her own UM coverage." 353 F. Supp. 3d at 1161. Leaning on this caselaw, MetLife asserts that Bryar cannot recoup benefits under his parents' policy because though "[Bryar] was a resident relative of his parents' household, he did not purchase any UM coverage himself, despite having an opportunity to do so." Resp. Br. at 13.

What MetLife ignores is that the UM policy exclusions in *Conner*, *Morris*, and *Vickers* all required resident-relative insureds to carry *UM coverage* specifically, not just liability insurance. *See Conner*, 216 P.3d at 851; *Morris*, 240 P.3d at 662; *Vickers*, 353 F. Supp. 3d at 1157. So in those cases, the claimants had to demonstrate that they bought separate UM coverage on their personal vehicles or be subject to the insurance carriers' exclusions in the operative policies.[13] That is not the case here. MetLife's exclusion requires

---

[13] For example, in *Morris* and *Conner*, the UM exclusions required the plaintiffs (as resident-relative insureds) to carry separate UM coverage on their vehicles on top of liability coverage. *Morris*, 240 P.3d at 662 ("The policy excluded UM coverage for an 'insured' who was a family member and was injured while occupying a vehicle he owned that was not insured for UM coverage at the time of the accident."); *Conner*, 216 P.3d at 851 ("We do not provide [UM] coverage for 'bodily injury' sustained by any 'insured:' . . .

*(footnote continued)*

only that Bryar's motorcycle be "insured by a motor vehicle insurance policy," rendering his liability policy with GEICO sufficient, even without his also purchasing UM coverage for his motorcycle. The exclusionary language— "motor vehicle insurance policy"—permits this under *Coates*. We follow the Oklahoma Supreme Court's direction to interpret "motor vehicle insurance policy" as meaning "either, or both, liability and UM coverage." *Coates*, 512 P.3d at 349. So with or without the UM coverage, Bryar's GEICO policy satisfies the plain language of MetLife's exclusion.

Given the foregoing, MetLife overstates the relevance of Bryar's previous opportunity to buy UM coverage.[14] To be excluded from UM coverage under MetLife's policy, an insured must both (1) have owned, leased, or had

---

[w]ho is a 'family member,' while 'occupying,' . . . any motor vehicle owned by that person: . . . which is not insured for [UM] coverage."). These requirements decided the outcome in each case: In *Connor*, the plaintiff didn't carry his own UM coverage, so the exclusion on his parents' policy applied, 216 P.3d at 851; but in *Morris*, the plaintiff had bought his own, separate UM coverage on his other, personally owned vehicles, so the exclusion on his mother's policy was inapplicable, 240 P.3d at 664.

[14] MetLife relies on *Vickers* in particular, advancing that the "Oklahoma Supreme Court . . . approved the analysis in [*Coates*]" that plaintiffs who reject UM coverage on their vehicles should be bound by UM exclusions unless the plaintiff, "unlike [Bryar] here, had never had the opportunity to purchase [UM] coverage." Resp. Br. at 12 (citing *Vickers*, 353 F. Supp. 3d at 1166). But to the extent that *Coates* favorably discusses *Vickers*, that discussion is dicta. *Coates*, 512 P.3d at 349. The *Coates* court deliberately distanced *Vickers* from its holding by stating that *Vickers* was based on "particular facts" and that its "conclusion is not relevant to the issue presented here, and we do not rely on it in our analysis." *Id.* at 349 n.4. This commentary from the Oklahoma high court combined with *Vickers*'s nonbinding authority on this court, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), makes the case of little utility here.

regular access to the vehicle occupied when the injury occurred and (2) have neglected to insure that vehicle with a "motor vehicle insurance policy." App. vol. I, at 68. By purchasing "motor vehicle insurance" from GEICO, Bryar satisfies the second requirement; and automatically, he avoids the exclusion. This makes his previous opportunity to buy UM coverage irrelevant. Yet, MetLife focuses entirely on this point, as though that forgone opportunity alone defeats Bryar's claim. This reveals MetLife's "significant misunderstanding" of the exclusion's reach. *Coates*, 512 P.3d at 349; *see id.* (repudiating the insurance carrier's argument that the plaintiff "reject[ing] UM coverage under the motorcycle policy" alone, "allow[ed] it to deny UM coverage" otherwise available).

At bottom, if MetLife wanted to require Bryar (as a resident insured) to carry UM coverage under his own motorcycle policy as a condition to his retaining UM coverage on his parents' policy, then it merely had to write its exclusion to say so. *See, e.g.*, *Conner*, 216 P.3d at 851 (holding that exclusions requiring resident insureds to carry UM coverage are valid and "not inconsistent with the purpose of § 3636(E)"). But MetLife chose otherwise, extending UM coverage on the lesser condition that Bryar merely obtain a "motor vehicle insurance policy."

The *Coates* rule makes sense. MetLife can write the exclusion as it pleases. But it cannot write its exclusion broadly ("not insured by a motor vehicle insurance policy") and enforce it narrowly (requiring that a "motor

16

vehicle insurance policy" include UM coverage in addition to liability coverage). To interpret MetLife's UM exclusion as it does would offend the Johnsons' choice to protect their son by purchasing and paying premiums on a policy that covered him as their relative. *See Lane v. Progressive N. Ins. Co.*, 494 P.3d 345, 351 (Okla. 2021) ("The purpose of Oklahoma's statutory scheme is to assure each UM insured person the full contracted coverage for which a premium has been paid." (cleaned up)). As written, MetLife's UM exclusion fails to advise even the most attentive policyholders that a resident insured in Bryar's position needs to buy separate UM coverage on his motorcycle. MetLife cannot exclude Bryar from UM coverage without plainly saying so in its exclusion.[15]

The district court erred in concluding that MetLife's UM exclusion applies to Bryar's claim, and so we reverse the court's grant of MetLife's motion for summary judgment and its denial of Bryar's motion for partial summary judgment.

---

[15] In his reply, Bryar briefly sojourns into principles of contract interpretation, imploring that "any sort of construction of the . . . clear words of the [insurance policy]," Reply Br. at 6, should be "narrowly viewed," *id.* (quoting *Conner v. Transamerica Ins. Co.*, 496 P.2d 770, 774 (Okla. 1972)). Our analyses and conclusions do not rely on these principles, but we note Oklahoma's stance that "[i]nsurance contracts are contracts of adhesion" to be "interpreted most strongly against the party that prepared the contract." *Porter v. Oklahoma Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014) (citation omitted).

17

## II.    Motion for Leave to Amend

After he moved for partial summary judgment against MetLife, Bryar sought leave from the district court to amend his complaint to add a bad-faith claim. The district court denied the motion. We affirm.

Once the twenty-one-day window for amending the complaint as of right has passed, the district court should "freely give leave" for a party to amend "when justice so requires." Fed. R. Civ. P. 15(a). "But a district court may withhold leave to amend if the amendment would be futile." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022). An amendment is futile if, "as amended, [it] would be subject to dismissal," *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013); for example, an amendment would be futile where the added claim would be "time-barred," *id.* at 1019. Though "[w]e usually review the denial of leave to amend a complaint under the abuse-of-discretion standard," "when a district court denies leave to amend because amendment would be futile, our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020) (cleaned up).

The district court denied Bryar's motion for leave to amend his complaint. In part, the court determined that the bad-faith claim was futile, given its decision that Bryar lacked any right to recover under the policy. But regardless, the court found that the claim would be time-barred by the relevant statute of limitations.

18

Under Okla. Stat. tit. 12, § 95(3), actions for injury arising in tort must be brought within two years after the cause of action accrues. MetLife denied Bryar coverage on March 7, 2019, which gave him until March 7, 2021, to bring his bad-faith claim.[16] Yet Bryar moved for leave to amend on January 7, 2022. Bryar does not contest these facts. So even though we reverse the summary-judgment ruling in Bryar's favor, we affirm the district court's decision denying his motion for leave to amend on futility grounds. *See Chilcoat*, 41 F.4th at 1218.

On this issue, Bryar argues that the court's denial was a "result" of its erroneous decision on summary judgment and that we should therefore reverse. Op. Br. at 26. That argument is wanting. Even if Bryar's bad-faith claim is now viable, based on our favorable resolution of the summary-judgment motions, the claim is still time-barred. And Bryar supplies no reason supported by Rule 15 or caselaw that would excuse his delinquency or otherwise convince us that the statute of limitations doesn't apply. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) ("We have held that denial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay." (cleaned up)).

---

[16] Bryar filed his original state court petition on April 16, 2021, about a month after the statute-of-limitations expired on March 7, 2021. So even if the bad-faith claim related back to the original complaint, it would still be time-barred. *See* Fed. R. Civ. P. 15(c)(1)(B).

## CONCLUSION

We affirm in part and reverse in part. This case is remanded for further proceedings consistent with this opinion.